[S. F. No. 5351. In Bank.—April 8, 1912.]

## SKOOKUM OIL COMPANY (a Corporation), v. U. M. THOMAS, Respondent.

VENDOR AND VENDEE—TIME ESSENCE OF CONTRACT—FORFEITURE BY VENDEE—SUBSEQUENT TENDER OF PAYMENT BY VENDEE—RECOVERY OF INSTALLMENTS PAID.—Under a contract for the sale of land, in which time is made of the essence of the contract and performance by the vendee is made a condition precedent to a conveyance, and upon breach thereof he is declared to forfeit all rights thereunder, including payments made thereon, the vendee cannot, after his default, without excuse shown therefor, by a tender of the amount due, acquire an equitable or a legal right to maintain an action to recover back the moneys paid under the contract.

ID.—VENDOR NOT PUT IN DEFAULT BY MERE TENDER.—The purchaser cannot, in such case, put the vendor in default by mere tender, nor

can he elect to consider the contract at an end, and recover what he has paid on it, where the vendor has not abandoned it, but stands upon its terms and conditions.

ID.—RESCISSION OF CONTRACT—REFUSAL OF VENDOR TO ACCEPT TENDER.—Under such a contract the refusal of the vendor to accept a tender made by a purchaser in default, and to convey to the purchaser after such default, does not effect a rescission of the contract, nor entitle the vendee to recover the money paid.

ID.—EQUITY WILL NOT RELIEVE FROM UNEXCUSED DEFAULT.—Equity will not relieve such purchaser who has made an unexcused default and has not fulfilled conditions precedent to the vesting of his right of action.

ID.—RIGHT OF VENDOR TO RETAIN PURCHASE MONEY UPON VENDEE'S DEFAULT.—The vendor's right to retain the purchase money, where default was unexcused, is independent of any express clauses in the contract for forfeiture of rights, or for the retention of the purchase money as liquidated damages, and such express clauses are but declarations in express terms of the legal rights of the parties under such a contract, existing without them.

ID.—TIME WHEN MADE ESSENCE OF CONTRACT—PROVISION FOR FORFEITURE.—Time may be made of the essence of such a contract without employing that precise expression, and is so made when the contract expressly provides that upon the failure of the vendee to comply with the conditions therein set forth, any payments made by him to the vendor should be forfeited to the latter as liquidated damages, and when it was provided in an extension of time subsequently given for the payment of the first installment of the purchase price, that if the vendee did not elect to purchase the land, the vendor should retain the consideration paid for the extension as liquidated damages.

ID.—AGREEMENT FOR ABANDONMENT AND RESCISSION.—After the vendee's breach the vendor may agree to a mutual abandonment and rescission, in which instance alone the vendee in default would be entitled to a repayment of the part of the purchase price paid.

ID.—TIME ESSENCE OF CONTRACT IN CASE OF SALE OF MINING PROPERTY.—The inquiry whether time is of the essence of the contract is to be determined from the terms of the contract, but some consideration is to be given to the character of the property. If the subject-matter of the contract is a mine or mining property, time is of the essence, independent of any express stipulation in the instrument.

ID.—CONSTRUCTION OF PROVISION FOR FORFEITURE.—A provision in an optional contract for the purchase of land in four equal installments of ten thousand dollars each, to the effect that all sums paid therein should apply to the purchase price, but if the vendee failed to comply with the conditions therein set forth, any payments "heretofore" received by the vendor should be forfeited to him as liquidated damages, should be construed to apply to installments subsequently paid on the purchase price, and not alone to a sum of ten dollars

which the contract recited was paid as the consideration. The term "heretofore" should be treated as wholly unnecessary to express the intention and be rejected, or should read "thereunto."

ID.—VENDOR MAY IMMEDIATELY TAKE ADVANTAGE OF VENDEE'S DEFAULT. —The vendor, under such a provision for forfeiture, had the right to consider it as complete the day following the maturity of an installment of the purchase price.

ID.—CONTRACT FOR SALE OF UNDIVIDED INTEREST IN LAND—CHANGE IN SUBJECT-MATTER OF CONTRACT — PARTITION WITH CONSENT OF VENDEE.—An owner of an undivided interest in a tract of land, who has entered into a contract for the sale of his interest, is not precluded from claiming a forfeiture under the contract, notwithstanding there has been a change in the subject-matter of the contract due to a partition of the land between the vendor and his cotenant, if such partition was made in pursuance of an arrangement with the vendee and with his consent and for his benefit. The evidence in this case shows that the partition was so made.

APPEAL from a judgment of the Superior Court of Fresno County. H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

Dudley Kinsell, C. C. Hamilton, and Mastick & Partridge, for Appellant.

Sutherland & Barbour, and George L. Warlow, for Respondent.

LORIGAN, J.—This appeal is here for further consideration after decision by the district court of appeal for the third appellate district affirming a judgment in favor of the defendant.

The action was brought to recover the sum of twenty thousand dollars received by defendant from R. L. Patterson, W. E. Dingley, and H. H. Dingley, assignors of plaintiff and from plaintiff pursuant to a certain option to purchase land. The court made a general finding that the averments of the complaint, except as to the corporate capacity of plaintiff, were untrue, and rendered judgment in favor of defendant. The appeal is from the judgment on a bill of exceptions, the claim of appellant being that the evidence does not sustain the finding.

It appears that on January 17, 1907, defendant executed to

R. L. Patterson, or assigns, a contract whereby he gave to the latter "the right and option to purchase from me all that certain tract or parcel of land in the county of Fresno, state of California, described as follows: An undivided one-half interest in and to all of the S. E. ¼, sec. 6, T. 26 S., R. 15 E., M. D. B. & M., . . . upon the following terms and conditions: The price of which is forty thousand dollars, payable in four equal payments of ten thousand dollars each at intervals of six months, commencing January 27th, 1907. If said R. L. Patterson elects to purchase said property, he shall on or before January 27th, 1907, three o'clock P. M., pay me the sum of ten thousand dollars (in addition to the sum of ten dollars herein paid), and upon such payment he shall have and he is hereby given until February 27th, 1907, three o'clock P. M., to search the title of said property; and if the title is found good and valid he is to pay me the balance of the money, to wit: ten thousand dollars July 27th, 1907; ten thousand dollars January 27th, 1908; and the balance of the purchase price, ten thousand dollars, on July 27th, A. D. 1908, upon my tendering to him a grant, bargain and sale deed, conveying to him or his assigns, said above described property, with valid title free and unencumbered, which I hereby agree to do. Said deed to be placed in escrow with the Bank of Coalinga upon the deposit of the first payment of ten thousand dollars. . . . If the title cannot be perfected within said time I agree upon demand to return to said R. L. Patterson or his assigns, all sums paid on account of this option. All sums paid herein shall apply to the purchase price of said property, but if said R. L. Patterson or his assigns, fails to comply with the conditions herein set forth, any payments heretofore received by me are to be forfeited to me as liquidated damages. Upon payment of first installment said Patterson or his assigns shall be given possession of said land and permitted to enter upon and drill said land for oil." There are other provisions in the option immaterial to the present consideration.

Subsequently, and prior to January 27, 1907, the date provided for making the first payment under the contract, the defendant indorsed upon it that "for and in consideration of the sum of one thousand dollars to me in hand paid" he extended the time for payment therefor to February 25, 1907, the said one thousand dollars to constitute part of said payment of ten

thousand dollars if Patterson or his assigns should "elect to take the property"; if he did not so elect defendant was "to retain said sum of one thousand dollars as and for liquidated damages."

In February, 1907, Patterson conveyed an undivided one-third interest in the option to H. H. Dingley and E. W. Dingley and notice of such conveyance was given to the Bank of Coalinga. On February 25, 1907, Patterson and the Dingleys paid into the Coalinga Bank for defendant the sum of nine thousand dollars. About the time of this latter payment defendant and Patterson deposited with the said bank the escrow papers and instruments, the defendant at that time also depositing therewith pursuant to the option agreement a deed in favor of Patterson to an undivided one-half interest in the property as described in the option, and to which interest it was stipulated on the trial that when the option was executed defendant had title.

On March 25, 1907, before the second payment under the option became due Patterson and the Dingleys transferred all their rights and interests under the option to the plaintiff, and on July 27, 1907, paid defendant said second installment of ten thousand dollars. It was stipulated on the trial "that there was a partition of the land described in said paper writing (the option) leaving the absolute title to the south-half of the southeast quarter of section six in the defendant U. M. Thomas, and that this partition took place on the 25th of March, 1907." Subsequent to the date when the partition was made the defendant deposited with the bank a deed dated March 27, 1907, in favor of Patterson conveying the south half of the southeast quarter of the section.

When the third payment under the option became due on January 27, 1908, it was not paid or offered to be paid and on the next day, in response to a telegraphic demand from defendant for the return of the two deeds to him they were sent to him by the cashier of the bank.

Prior to January 27, 1908, plaintiff informed defendant of its probable inability to meet the third payment then falling due and asked for an extension which the defendant refused to grant. Subsequent to January 28, 1908, the parties had several conversations about the option, at one of which—in October, 1908—plaintiff offered to pay the twenty thousand

dollars for which it was in default under the option, with interest and any damages which the defendant had sustained through failure of the plaintiff to make the payments when due, but defendant refused to consider the matter of the option at all. At no time did plaintiff or any one in its behalf tender to the defendant any money on account of the purchase price of the land. At all the meetings with defendant above referred to (which were sought by plaintiff alone) the defendant refused to talk with plaintiff on the basis of the option having any existence. His position after January 27, 1908, consistently adhered to, was that the option was at an end and that he was in no way further obligated by reason of its having been executed or, as described by one of the witnesses of the plaintiff, his position was "that he considered the Skookum Oil Company had forfeited all of its rights under the option and he would not discuss the matter with reference to the option."

The points made by appellant are: 1. That time was not of the essence of the option agreement and that the offer of the plaintiff to pay for all damages sustained should have been held to excuse the delay; 2. That the condition in the contract for a forfeiture should have been strictly construed; 3. That the defendant at the time he treated the option as forfeited—default in the third payment—the entire subject-matter of the contract had been changed and defendant was not in a position to deliver the land specified in the contract, as he had converted an undivided interest in the whole quarter section held by him when the option was executed into a sole ownership by him of the south half thereof.

The first two points were fully discussed and the law respecting them clearly declared in the decision of the district court of appeal when this matter was before it, and we quote and adopt what is there said in disposing of them.

That court said:—

"It seems to us that the principles so clearly presented in *Glock* v. *Howard & Wilson Colony Co.*, 123 Cal. 1, [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713], are determinative of the questions here involved. It was there held that under a contract for the sale of real estate, in which time is made of the essence of the contract and performance by the vendee is made a condition precedent to a conveyance and upon breach thereof

he is declared to forfeit all rights thereunder, including pay-
ments-made thereon, the vendee cannot, after his default, with-
out excuse shown therefor, by a tender of the amount due, ac-
quire either an equitable or a legal right to maintain an action
to recover back the moneys paid under the contract, nor can
the purchaser, in such case, put the vendor in default by mere
tender; nor can he elect to consider the contract at an end, and
recover what he has paid on the contract, when the vendor has
not abandoned the contract, but stands upon its terms and con-
ditions. It was also held that under such a contract the refusal
of the vendor to accept a tender made by a purchaser, in de-
fault, and to convey to the purchaser after such default, does
not effect a rescission of the contract, nor entitle the vendee to
recover the money paid. Neither will equity relieve such
purchaser who has made an unexcused default and has not
fulfilled conditions precedent to the vesting of his right of
action. It was held further that the vendor's right to retain
the purchase money, where default was unexcused, is inde-
pendent of any express clauses in the contract for forfeiture
of rights, or for the retention of the purchase money as liqui-
dated damages, and that such express clauses are but declara-
tions in express terms of the legal rights of the parties under
such a contract, existing without them.

"Appellant attempts to distinguish the present case from the
Glock case on the ground that there the contract expressly
made time of its essence. But it is very clearly shown in the
opinion in that case that time may be made of the essence of
a contract without employing those precise expressions. Said
the court: 'When the equitable showing is not made to excuse
the breach, the vendor has the right in equity, as he always has
at law, to retain the moneys paid by the vendee. Therefore,
we have said that it matters not in such contracts that the
parties have declared that the vendor may retain the moneys
paid as stipulated damages. The name which the parties thus
give does not alter the fact nor change the vendor's rights.'
See the authorities cited in the opinion. The contract here ex-
pressly provides that upon the failure of the vendee 'to comply
with the conditions herein set forth, any payments heretofore
received by me are to be forfeited to me as liquidated damages.'
In the provision extending the time for the first payment of ten
thousand dollars it was expressly stipulated that if the vendee

did not elect to purchase said land the vendor was to 'retain said sum of one thousand dollars as and for liquidated damages.' It seems to us that the stipulations of the contract show unmistakably that prompt payment on time was a condition precedent and became of the essence of the contract. Mr. Pomeroy says: 'It is certain that when the contract is made to depend upon a condition precedent, in other words, when no right shall vest until certain acts have been done, as for example, until the vendee has paid certain sums at certain specified times, then also a court of equity will not relieve the vendee against forfeiture incurred by a breach of such condition.'

"In the Glock case, *supra,* the court said: 'After the vendee's breach the vendor may agree to a mutual abandonment and rescission, in which last instance, and in which alone, the vendee in default would be entitled to a repayment of the money.'

"There is in this case absolutely no excuse given for the failure to make the payment on January 27, 1908, except that the vendee had not the money and that at that particular time it was difficult to borrow money—an excuse not deemed of any legal significance—and there is no pretense that there was any mutual abandonment or rescission of the contract. The supreme court said, in *Oursler* v. *Thacher,* 152 Cal. 739, 745, [93 Pac. 1007]: 'There being no rescission or abandonment of the contract by the plaintiffs, and the plaintiffs at all times having insisted on the contract and stood on its terms, and being in no respect in default, the vendees in default were not entitled to recover either the moneys paid by them to plaintiffs or the moneys expended in developing the property,' which was a mine. The consideration to be paid was $500.00 per acre and the vendees were given the right to go into possession and drill for oil. The inquiry whether time is of the essence of a contract is to be determined, it is true, from the terms of the contract; but some consideration is to be given to the character of the property. Mr. Lindley says: 'The authorities, both in England and America, recognize that where mines or mining properties are the subject of contract, time is of the essence, independent of any express stipulation inserted in the instrument.' (2 Lindley on Mines, sec. 859.) So held in *Waterman* v. *Banks,* 144 U. S. 394, [36 L. Ed. 479, 12 Sup. Ct. Rep. 646]. A syllabus reads: 'Time may become of the essence of a contract

for the sale of property, not only by the express terms of the parties, but from the very nature of the property itself; mineral property requires the parties interested in it to be vigilant and active in asserting their rights.'

"Appellant seeks to escape the force of the contract by resort to the rule that conditions of forfeiture are to be strictly construed against the party in whose behalf they were created. The contention is that the word 'heretofore' used in the forfeiture clause must be construed to limit the defendant's right to the ten dollars, parenthetically referred to as 'herein paid.' The rules of construction forbid seizing upon some isolated provision of a contract in order to compel a certain result, and require that the intention be derived from a consideration of the entire instrument. (Civ. Code, secs. 1641, 1650.) True, the language is to govern, if it 'is clear and explicit, and does not involve an absurdity.' (Civ. Code, sec. 1638.) The paragraph in question reads: 'All sums paid herein shall apply on the purchase price of said property, but if said R. L. Patterson or his assigns, fails to comply with the conditions herein set forth, any payments heretofore received by me are to be forfeited to me as liquidated damages.' It seems to us that the vendor intended to refer to the 'sums paid herein . . . on the purchase price,' and it is not reasonably probable that he referred only to the ten dollars mentioned in a transaction involving property of such high value. The claim that the forfeiture must refer to the ten dollars paid as consideration seems to us wholly unreasonable if not absurd, because if paid as the consideration it became the vendor's and the term forfeited could not reasonably be said to apply to it. The term 'heretofore' should be treated either as wholly unnecessary to express the intention and be rejected, or should read 'theretofore.' In *Sprague* v. *Edwards*, 48 Cal. 239, the phrase in a deed reading: 'subject, however, to the "appeal" of the said John A. Sutter' the word 'appeal' was construed to mean 'approval.' The court said: 'The sole object to be attained in the construction of contracts is to ascertain the real intention of the parties; and with this view the whole contract and all its provisions, together with the relation of the parties toward each other, will be considered.' The provision immediately preceding the forfeiture clause lends support to our view. It reads: 'If the title cannot be perfected within said time I

agree upon demand to return to said R. L. Patterson or his assigns, all sums paid on account of this option.'

"That defendant chose to regard the forfeiture as complete the day following the maturity of the payment puts no different complexion on the transaction than if he had delayed a month or two months. His rights, whatever they were, accrued upon the vendee's default and were immediately available to the vendor. The vendee's construction of the contract would permit him to continue prospecting for oil and whenever he chose or was compelled to desist, he could in any event recover the money paid. It was said in the Glock case, *supra:* 'It would be to the last degree unjust and inequitable to allow a vendee, after his default under such a contract, to put the vendor in default by a mere tender. . . . Failing to make payment he would three months, six months, one year, or as in this case over three years, after the date of the failure, make an offer to perform, and if the land had risen in value, according to the theory of respondent here, could compel performance; but in every case he could recover the money paid.' It appeared that in October, 1908, seven months after the default in payment, and after all payments were past due, the president of plaintiff company and its attorney, Mr. Dudley Kinsell, met the defendant at Fresno and asked him if he would receive the $20,000.00. Defendant said he would not as he had already obligated himself to convey the property to other people. No tender of any money was made. Plaintiff's witness testified: 'I will frankly say we didn't have the money with us and couldn't have done it that day'—i. e., make a tender."

The third point made by appellant for reversal is that prior to the time defendant treated the option as forfeited there had been an entire change of the subject-matter of the option and defendant was not in a position to convey to the plaintiff the interest in the lands specified and mentioned in the contract. This point is based on the fact that the option agreement called for the conveyance by defendant to Patterson on performance of its terms by him of an undivided one-half interest in the whole quarter section described in the option, a deed therefor to him having been originally deposited in the bank in escrow; and the further facts that on the trial it appeared that subsequent to the execution of the option con-

tract and deposit of this deed, and prior to the default of the plaintiff in making payments there had been a partition of the land described therein leaving the absolute title in the defendant to the south half of the southeast quarter of the section, and that subsequently defendant deposited in bank in escrow a deed from himself to Patterson to said absolute interest as a substitute for the original deed by him of an undivided one-half interest in said quarter section as men-- tioned in the option.

Under these facts the appellant seeks to invoke the rule that "if the vendor is unable to convey a proper title according to his contract at the time of performance because he has no title, or has a defective title, or has a less estate in the land than he agreed to convey, the vendee may treat the contract as at an end and may recover in an equitable proceeding for rescission the money he has paid on account of the purchase price." (29 Am. & Eng. Ency. of Law, p. 727.)'

But it is quite apparent from an examination of the record in this case that the stipulation as to partition was only made 'n connection with the formal proofs which plaintiff was making respecting the option contract, the assignment from Patterson to the Dingleys, and from all of the latter to the plaintiff, and to show the situation, in fact, respecting the property to which the option applied when it was claimed by defendant that all rights under it had been forfeited. No claim was made in the court below that the legal effect of the partition and change in the subject-matter of the option operated as a rescission of the contract entitling plaintiff to recover back the payments previously made. The case was tried on no such theory and the point was made for the first time in the district court of appeal and insisted on here. This of itself would afford good reason for refusing to consider a claim upon which no reliance was placed in the trial court and is urged for the first time on appeal as a ground for re- versal. But it is not necessary to dispose of the point for any such reason. The claim of plaintiff is based solely on the ground that it was shown by stipulation that there had been a partition of the property. It does not appear who asked for the stipulation as to this fact, though from its place in the record it may be assumed that plaintiff did. No reason or purpose in asking for it was given by the plaintiff and de-

fendant seems to have made no inquiry as to why it was desired. There appears to have been just the bald stipulation entered into between the parties, early in the trial, of the fact of the partition without any reliance being placed on it by plaintiff upon the trial or until it is now relied on to overthrow the finding of the trial court in favor of defendant. If, under the stipulation, appellant had, on the trial, claimed a right to recover on account of the change in the subject-matter of the option contract affected by the partition the defendant would have had the right, if he could, to show that the partition had been effected by mutual consent of the assignors of the plaintiff and the defendant; and if now, on an examination of the record sufficient evidence appears from which this fact may be fairly inferred, it will dispose of the claim of appellant. Necessarily, as no claim was made by plaintiff under the partition on the trial it could hardly be expected that evidence addressed directly to the circumstances under which the partition was made would appear. There was, however, evidence introduced on other subjects which, in a measure, also bears on the matter of the partition, and which we are satisfied sufficiently warrants a reasonable inference that the partition was effected with the knowledge and consent of Patterson and of the Dingleys, the assignors of the plaintiff.

The partition between defendant and his cotenant was made on March 25, 1907, and on that same day a deed to the property as described in the option was made to the plaintiff by Patterson and the Dingleys, the latter having theretofore acquired an interest in the option from Patterson. Prior to this date the plaintiff had been organized as a corporation and the Dingleys from the time of its organization had been officers thereof—W. H. Dingley being vice-president up to March 9, 1908, and from that date thereafter its president; and W. E. Dingley had been its secretary ever since its organization. Both, later, owned all the issued stock of the corporation save five shares, and they were the persons most actively engaged in attending to the interests of the corporation under the option and who had the several interviews with the defendant subsequent to the default of the corporation in making payments under the option, at which interviews they endeavored to persuade the defendant to renew

the option or allow it to be carried out, notwithstanding the default, or refund the moneys previously paid under it. In all these interviews, while various reasons were urged by them why the option should be extended or renewed or the payments refunded, no claim was made, or even intimated, in any of these interviews that the corporation had a legal right to have the payments returned on the ground that a rescission of the contract had been worked prior to the default of plaintiff by a change in the subject-matter of the option by reason of the partition and the substituted deed, although the defendant in all these interviews refused to recognize that the corporation had any rights whatever under the option or to discuss matters on the basis of the existence of any rights in favor of the corporation under it or to restore any payments which had been made. It further appears that the deed of March 27, 1907, from defendant to R. L. Patterson, deposited by the former with the bank in lieu of the original deed, was deposited there "after the division of the property between Mr. Webb and Mr. Thomas." This sufficiently indicates that the partition was effected between these two—Webb and Thomas—as cotenants of the property, though we attach importance to this only as it bears upon another item of evidence. Plaintiff introduced in evidence a letter written by defendant to the Coalinga Bank on April 2, 1907. In this letter were inclosed three deeds—the first, a deed from Webb and others to the defendant; the second a deed from defendant to Webb; the third a deed from defendant to Patterson and others. Respecting these deeds the defendant wrote "the first deed (Webb to the defendant) is unsigned, but I am told Webb will have it executed in accordance with an agreement with Patterson. When this is done the deed (defendant to Webb) can be delivered to Webb; the third deed (defendant to Patterson) you will keep in escrow in place of the deed sent you, which deed you can return to me. This third deed (defendant to Patterson and others) can be delivered to Patterson when the last of the $40,000 payments is made."

It is quite apparent from this letter, in connection with the testimony previously referred to showing that the division or partition of the land was between the defendant and Webb as cotenants, that the partition was effected and the deed from Webb to defendant and from the latter to Patterson and

others of an absolute portion of the quarter section was made under an arrangement and agreement with Patterson prior to the deed to the plaintiff. It further appears in the record that prior to the commencement of the present action the plaintiff had brought an action against defendant which had been tried, though it does not appear what was the result. That action was to enforce specific performance of the option contract against defendant and the complaint was verified on behalf of the plaintiff by H. H. Dingley as its president. It was alleged that plaintiff, as assignee of Patterson, had offered to perform all the covenants contained in the agreement between defendant and Patterson and pay the balance under the agreement, and that defendant refused to make a deed to the land and refused to return the twenty thousand dollars theretofore paid to him, and the prayer was for a decree to compel defendant to make and execute to it a deed to the "south-half of the southeast quarter of section six," being the absolute interest which defendant had acquired under the partition and to which the substituted deed in escrow applied.

Taking into consideration these facts disclosed by the record, and without further discussing them, it is sufficiently apparent that the partition was effected with the consent of Patterson, the assignor of the plaintiff, and from the relations between Patterson and the Dingleys, individually and as officers of the plaintiff, that the partition was effected by Patterson with the understanding and consent of all of them and for their benefit. When all the matters recited are fairly considered, this is the reasonable inference to be deduced.

In his answer to the petition for rehearing respondent incorporated therein as an exhibit a copy of the complaint in the former action just referred to, certified by the clerk of the superior court as being correct. In this copy of the complaint is set forth, among other things, a power of attorney by plaintiff to Patterson dated January 19, 1907, authorizing him to effect a partition of the property and an agreement for a division of the property between Patterson, respresenting defendant, and Webb, the cotenant of the defendant and persons claiming under an agreement to sell executed by Webb, and the interchange of the deeds effecting a partition of the land and vesting title in plaintiff to the south half of

the southeast quarter. But this is not part of the record and cannot be considered by us. If we could do so it would only strengthen what is reasonably inferable from the record properly before us,—namely, that the partition and the substituted deed to the segregated portion of the quarter section were effected and made with the consent of the assignors of plaintiff prior to their assignment to plaintiff of their rights under the option.

The judgment appealed from is affirmed.

Angellotti, J., Shaw, J., Sloss, J., and Melvin, J., concurred.

Rehearing denied.