## HURLEY v. ANICKER.

No. 4498.   Opinion Filed July. 20, 1915.

Rehearing Denied September 14, 1915.

### (151 Pac. 593.)

**VENDOR AND PURCHASER—Rescission—Right to Rescind.** A party who has contracted to buy land and has paid money, or done an act in part performance of the agreement, and then stops short and refuses to proceed to its ultimate conclusion, the other party being ready and willing to· proceed and fulfill all his stipulations according to the contract, will not be permitted to recover what he has paid, or for what he has done.

(a)  But, where a party has made a payment under a contract to buy land, and has failed to make further payments according to the contract, and the contract has been mutually rescinded, such purchaser may recover the money so paid in part performance.

(b)  And in such last-mentioned case, if the purchaser is responsible for the breach and failure to make the other payments, the other party, in a suit to recover from him the payment he has received, may recoup any actual damages he may have suffered because of the purchaser's failure to fully perform.

(Syllabus by Brewer, C.)

*Error from Superior Court, Muskogee County;*
*Farrar L. McCain, Judge.*

Action by Homer W. Hurley against William J. Anicker.   Judgment for defendant, and plaintiff brings error. Reversed and remanded, with directions.

*J. W. Anthony, Malcolm E. Rosser,* and *Preston C. West,* for plaintiff in error.

*Roach & Bradley,* for defendant in error.

Opinion by BREWER, C.   On October 17, 1910, the parties to this suit entered into a contract for the purchase of 200 acres of farming land.   By the terms of the contract

Hurley was to, and did, pay $2,000 in cash, and was to pay $2,400 in 30 days thereafter, and the balance on January 1, 1911. The contract provided that Anicker was to furnish Hurley with an abstract of title, "which shall, after examination, be returned to him and held by him until all notes or payments under this contract are paid." On October 22, 1910, Anicker executed a mortgage for $1,800, which covered a portion of the. land sold, and which was payable on or before January 15, 1911. Upon receipt of the abstract, showing this mortgage, Hurley declined to make any further payments under the contract, and therefore did not pay the $2,400 to be paid in 30 days after the date of the contract; nor did he pay the balance of the purchase price on or before January 1, 1911. This suit was brought by Hurley for money had and received in the sum of $2,000, the amount of money paid at the execution of the contract.

In the petition it is alleged that "*   *   * defendant rescinded said contract, but refused and still refuses to return the said sum." Defendant says in his answer, after alleging that Hurley had breached his contract by a failure to make the payments provided therein within the dates mentioned, "and that after January 1, 1911, on account of the breach of said contract by the plaintiff, the defendant rescinded the same."

At a trial of the case Hurley testified that Anicker notified him that he rescinded the contract, and that he had so treated it as rescinded and at an end. The defendant offered no testimony, but interposed a demurrer to that offered by plaintiff, which was sustained by the court, and judgment rendered that plaintiff take nothing, and that his suit be dismissed.

Before proceeding to a discussion of any of the points in this case it is important to remember and bear in mind

that the petition herein alleges a rescission of the contract; that the defendant specifically and formally admits that the contract was rescinded; and that the evidence in the case shows the same, and is not contradicted. But for the fact that these parties mutually abandoned and rescinded the contractual relation existing between them, the plaintiff would have no standing in court to recover the payment made in part performance of the contract, if in default in the further performance of the same. Whether or not the placing of the mortgage on a part of the land contracted to be sold justified the plaintiff in refusing to make further payments need not be considered here.

This court, in the case of *Helm v. Rone,* 43 Okla. 137, 141 Pac. 678, has quoted with approval from the case of *Hansbrough v. Peck,* 5 Wall. 497, 18 L. Ed. 520, the following:

"And no rule in respect to the contract is better settled than this: That the party who has advanced money, or done an act in part performance of the agreement, and then stops short and refuses to proceed to its ultimate conclusion, the other party being ready and willing to proceed and fulfill all his stipulations according to the contract, will not be permitted to recover back what has thus been advanced or done. *Green v. Green,* 9 Cow. (N. Y.) 46; *Ketchum v. Everton,* 13 Johns. (N. Y.) 359, 7 Am. Dec. 384; *Leonard v. Morgan,* 6 Gray (Mass.) 412; *Haynes v. Hart,* 42 Barb. (N. Y.) 58. The same doctrine has been repeatedly applied by the courts of Illinois, the state in which this case arose. *Chrisman v. Miller,* 21 Ill. 236, and cases referred to in the argument."

This doctrine was reannounced in the case of *Snyder v. Johnson,* 44 Okla. 388, 144 Pac. 1035.

It may be remarked that the Hansbrough Case, *supra,* is one of the leading cases in this country, and has been

widely cited. We call special attention to the qualifying clause in the quotation given, *"the other party being ready and willing to proceed and fulfill all his stipulations according to the contract."* These were not idle words placed in the rule by the Supreme Court of the United States, but are an essential part of the rule announced, and by giving due weight to which it will be seen, when coming to a consideration of the case at bar, where the contract had been abandoned and mutually rescinded, they have the effect of differentiating and taking this case out of the rule of *Helm v. Rone* and *Snyder v. Johnson, supra*—indeed, in the last-named case the doctrine contended for here was recognized in the body of the opinion in the following language:

"It is contended in the brief of plaintiff in error that, after default was made by the vendee, there was a mutual rescission of the contract, and for that reason the defendant would be liable for the money advanced as part payment of such contract. This would be true if there were anything in the record which would substantiate the contention; but, inasmuch as the record fails to disclose facts, either in the pleadings or the evidence, which would support the contention that there was a mutual rescission of the contract, we cannot sustain the judgment."

The precise point involved here seems to have been before the California Supreme Court often, the statutes applicable there being practically the same as our own; and it has there been held in a line of decisions that, where a contract for the sale of land has been mutually abandoned or rescinded by the parties, the vendee may recover payments made, though the contract provided that on default in a payment the vendee should forfeit his rights and payments already made. The following cases are in point: *Drew v. Pedlar,* 87 Cal. 443, 25 Pac. 749, 22 Am. St. Rep. 257; *Phelps v. Brown,* 95 Cal. 572, 30 Pac. 774; *Shively v.*

*Water Co.,* 99 Cal. 259, 33 Pac. 848; and this doctrine is reaffirmed in the case of *Glock v. Howard & Wilson Colony Co.,* 123 Cal. 1, 55 Pac. 713, 43 L. R. A. 199, 69 Am. St. Rep. 17. This last case is lengthy, and distinguishes between those cases in which there has been no rescission of the contract and those in which a rescission has been had. This case, in a very exhaustive treatment, shows that under the California statutes, and by the general law of the land as well, a vendee who has breached his contract, failed and refused to carry out its terms, without any fault upon the part of the vendor, who is willing to perform, is not entitled to come into court and recover the portions of the purchase price that he has paid under the contract; but this case just as clearly and distinctly reaffirms the rule to the effect that, where a contract of purchase and sale has been rescinded, the vendee may then recover whatever amount of money he has previously paid thereunder, and this, notwithstanding the contract itself has a provision for the forfeiture of such sums, and that in this contingency, if the vendor wishes to recoup any part of the previous payments, he may do so, by showing that the rescission was due to the fault of the vendee, and that he (the vendor) has suffered actual damages, and of what the damages consist. We quote at some length from *Glock v. Howard & Wilson Colony Co., supra,* to show authority for the point we decide, the whole opinion in the case being well worth a careful study:

"Now, in such contracts, upon a breach by the vendor of the covenant to convey, what courses are open to the vendee? Obviously these: He may stand upon the contract, and sue at law for damages for the breach. Here his recovery will be governed by section 3306 of the Civil Code. Or, still standing upon his contract, he may go into equity, seeking its specific performance; or he may sue at law to

recover the amount that may have been agreed upon as stipulated damages; or, finally, treating the vendor's breach as an abandonment, he may himself abandon it, when, the contract having thus come to an end, he may sue at law to recover what he has paid, in an action for money had and received, for, the contract being at an end, the vendor holds money of the vendee to which he has no right, and to repay which, therefore, the law implies his promise. Upon the other hand, after the vendee's breach of the covenant to pay, what are the vendor's rights? First, to stand upon the terms of his contract, and sue for its breach under section 3307 of the Civil Code; second, still resting upon the contract, he may remain inactive, yet retain to his own use the moneys paid by the vendee, so that it is of no moment whether or not the contract declares that such moneys shall upon the breach be forfeited as liquidated damages; third, go'ng into equity, still upon his contract, he may seek specific performance; or, finally, if his generosity prompts him so to do, he may agree with the vendee for a mutual abandonment and rescission, in which last case, and in which last case alone, vendee in default would be entitled to a repayment of his money."

Further on in the opinion it is said:

"It has been said that after the vendee's breach the vendor may agree to a mutual abandonment and rescission, in which last instance, and in which alone, the vendee in default would be entitled to a repayment of his money. Such was the precise condition of affairs pleaded, and not denied, in *Drew v. Pedlar*, where it is said: 'Both the complaint and answer admitted that the agreement had been rescinded and annulled by the parties, and, as the judgment on the pleadings partly rests upon this fact, it is conclusive evidence of the fact.' And again: 'From the time the defendants elected to rescind the contract, or to consider and treat it as rescinded, it was their duty to refund the money they had received under the contract, and no demand before suit was necessary.' Such, indeed, is the law, and, if *Drew v. Pedlar* be confined to cases in the condition thus represented—that is to say, to cases where the

vendor has rescinded after vendee's breach—then no mis-understanding need arise, and no confusion will result."

The case of *Bartlesville Oil & Imp. Co. v. Hill,* 30 Okla. 829, 121 Pac. 208, is a case decided under the laws of Arkansas, in force in the Indian Territory. Besides, there is nothing in that case in conflict with the point decided here.

So in the case at bar we are of the opinion that the petition stated a good cause of action, and especially when this averment as to rescission is construed in connection with the answer, specifically admitting the same, and that under such circumstances the defendant, Anicker, would have the right, if he could, to show, first, that the failure to pay and the cause of the rescission were because of the fault of Hurley; this being established, that he has been damaged in a certain way, and in a certain sum, which is subject to proof. if he can make it. In this case, however, defendant would have to plead plaintiff's default, as well as the actual damages.

The cause should therefore be reversed, and defendant allowed to amend his answer, by alleging plaintiff's default and actual damages, with a new trial on these issues.

By the Court: It is so ordered.