## KERSHAW v. HURTT.

No. 7878—Opinion Filed Oct. 9, 1917.

(168 Pac. 202.)

1. **Contracts—Provision for Forfeiture—Enforcement—Recovery.**

In this state an agreement providing for a forfeiture in case of nonperformance of a contract is unlawful and cannot be enforced, but the parties to such contract, being in equal fault, neither party can recover money or property advanced in furtherance of such an agreement.

2. **Vendor and Purchaser —Nonperformance by Purchaser—Remedies of Purchaser.**

In case of an executory contract being made for the sale and purchase of lands, the deed to be delivered upon payment of consideration as same becomes due, where the vendee fails to perform his part of the contract, there being no failure, fault, or wrong on the part of the vendor, the vendee cannot recover any money or property advanced under such contract, nor obtain, by way of original action, affirmative relief as to the cancellation of mortgage given on other land to secure a part of the consideration.

3. **Appeal and Error — Equitable Action— Review.**

In an equitable action for rescission of a contract on the ground of fraud, where the record shows that the trial court failed to pass on the question of fraud, but, after the introduction of all the evidence on the part of both plaintiff and the defendant, erroneously granted relief to plaintiff on other grounds. this court may review the entire record and determine from the evidence the equitable rights of the parties, rendering judgment accordingly.

4. **Vendor and Purchaser — Fraud—Evidence.**

Facts in the instant case as stated in the opinion examined, and held not sufficient to authorize the cancellation of the contract of sale involved on the ground of fraud.

(Syllabus by Stewart, C.)

Error from District Court, Muskogee County; R. P. de Graffenried, Judge.

Action in equity by William F. Hurtt against L. R. Kershaw. Judgment for plaintiff on a directed verdict, and defendant brings error. Reversed, with directions to set aside judgment and render judgment for defendant.

L. J. Roach and Burford, Robertson & Hoffman, for plaintiff in error.

Bailey, Wyand & Broaddus, for defendant in error.

Opinion by STEWART, C. The defendant in error as plaintiff in the trial court brought action in equity against the plaintiff in error as defendant. The parties will be designated hereinafter as they were in the trial court. The plaintiff set out a written contract, made and entered into by and between the plaintiff and defendant, whereby plaintiff agreed to purchase 210 acres of land from the defendant for $10,500, of which $2,500 was to be cash, $5,000 to be in deferred payments covering a period of years, and $4000 to be by assuming an existing mortgage indebtedness against the land, the deed to be delivered when the plaintiff complied with his part of the contract by making the $2,500 cash payment and executing notes secured by mortgage against the land to secure the deferred payments of $5,000. Plaintiff asked for cancellation of such contract on the ground of fraud, for judgment for $1,000 cash paid under such contract and for cancellation of note and mortgage in the sum of $1,500 against land in Canada made in lieu of balance of the cash payment originally agreed upon between plaintiff and defendant.

The alleged fraud is to the effect that the defendant represented that the land was very valuable for agricultural purposes; that it was making from 50 to 60 bushels of oats per acre; that it was fine alfalfa land, and very productive; that plaintiff could make enough on said farm yearly to pay the balance due on the purchase price and the interest; that it was free from rock; that the plaintiff and defendant went on the land prior to making the sale contract, but plaintiff saw only a very small portion of the land; that he desired to go over all of the land and inspect the same but defendant assured him that there was no use to do so, that the land was as represented; that the plaintiff relied upon the representations made by the defendant; that as a matter of fact the land was not productive, would not grow alfalfa, would not produce one-fourth the amount of oats claimed by defendant; was not agricultural land but was rocky and rough, and not fit for agricultural purposes; that the representations so made by the defendant were fraudulent and false, and made for the purpose of inducing the plaintiff to make the contract, and did induce the plaintiff so to do.

After the overruling of demurrer to the petition, the defendant filed answer, denying generally the allegations contained in plaintiff's petition, but admitting the execution of the written contract between plaintiff and defendant for the sale of land, the payment by the plaintiff of $1,000 in cash and the execution of the note and mortgage in the sum of $1,500 in lieu of balance of cash payment of $2,500 originally agreed upon between plaintiff and defendant. Defendant specifically denied the making of any misleading and false statements to the plaintiff prior to the sale of the land, and alleged that, before entering into the contract, the plaintiff and defendant went upon the land together, at which time the plaintiff had opportunity to thoroughly inspect the land, did inspect the same, and relied upon such inspection in entering into the contract, not upon representations made by defendant. Defendant further answered that, after the filing of the suit and on February 21, 1914, the plaintiff called at defendant's office and stated that he had decided to carry out the contract; that the defendant had previously executed a deed, and that at such time, under the direction of the plaintiff, the deed was changed by the addition of the name of the wife of the plaintiff as joint grantee; and that afterwards and on the same day the plaintiff and his wife executed notes and mortgage in the sum of $5,000 to cover the balance of the purchase price on said land, the deed being retained until payment of the $1,500 note was made. The defendant alleged that, at the time of making the contract he was and still is the owner of the land, and that he has at all times been in a position and willing to carry out his part of the contract upon the payment by plaintiff of the installments of money provided for in that contract. Defendant further answered that, under the terms of the contract, the time of performance was the essence thereof, and that, in case of failure of defendant to carry out the stipulations and agreements of the same at the time and in the manner therein stated, the contract became null and void at the option of the defendant, and that all sums of money paid by the plaintiff became forfeited, and the defendant was authorized

to retain the same in satisfaction and liquidation of damages sustained by him, or that the specific performance of the contract might be demanded at defendant's option; that he had in all respects performed his part of the contract, but that plaintiff had failed and refused to make the payment of $1,500 due January 1, 1914, secured by the mortgage on the Canadian land; that the defendant now exercises his option to declare the contract null and void and to retain in liquidation of all damages sustained by him the sum of $1,000 paid and the note and mortgage on the Canadian land for $1,500.

The plaintiff replied, denying the allegations of new matter set up in defendant's answer, and alleged that the note and mortgage of $5,000 for the deferred payments on the land, obtained after the filing of the suit, was obtained from him by false representations on the part of the agent of the defendant, and at a time when the plaintiff, on account of sickness, was in a weak condition of mind and body.

After the introduction of testimony on the part of the plaintiff, the defendant demurred to the evidence, and the demurrer was overruled, with exceptions. At the close of the testimony, the plaintiff moved the court to direct a verdict for the plaintiff for the cancellation of the note secured by the Canadian land and for all money paid by the plaintiff to the defendant, waiving his claim for other damages. The court sustained the motion, and instructed the jury to return verdict in favor of the plaintiff for $1,000 with interest at 6 per cent. from February 1, 1914, and for cancellation of such note and mortgage. The jury returned a verdict accordingly, to all of which defendant excepted.

It appears that the motion for directed verdict was made by the plaintiff and sustained by the court on the theory that the provisions of the contract of sale, to the effect that, in case of failure of the second party (the plaintiff) to carry out the stipulations and agreements therein stated, the contract should be null and void, at the option of the first party, and all sums paid by the second party should be retained by the first party in satisfaction and liquidation of damages, being a contract for a forfeiture, were void, and that a cause of action thereby arose in favor of the plaintiff for all money and property advanced. Motion for new trial was duly lodged, and during the pendency of such motion it appears that the court became of the opinion that the plaintiff could

not, under the law, recover the $1,000 paid, but that plaintiff was entitled to have the note and mortgage of $1,500 canceled. A written stipulation was signed and filed by plaintiff and defendant to the effect that the court might separate such two items and grant a new trial as to one of the items and overrule the motion as to the other; that in event of an appeal, neither party would question the authority of the court to thus separate the items, it being agreed that nothing in the stipulation filed should affect the right of either party to test on appeal the judgment to be rendered on other proper grounds. The court sustained the motion as to the $1,000 item, but overruled the same as to the cancellation of the $1,500 note and mortgage, ordering the judgment to stand for the plaintiff as to the cancellation of the note and mortgage. The plaintiff thereafter filed motion to modify the judgment, and the court again changed its views and reinstated the verdict of the jury and the original judgment as rendered, on the theory that defendant's answer, electing to terminate the contract, such act is not such a rescission on his part which authorized the plaintiff to recover. The record discloses that in rendering judgment neither the trial court nor the jury passed on the issue of fraud. Therefore, in reviewing the court's action in directing the verdict and the proceedings thereafter, we must do so on the theory that no fraud was practiced

There can be no question that, in so far as the contract provided for the transfer of land, the consideration therefor, and the conditions under which the deed was to be delivered, it was lawful and binding on the parties thereto. In the absence of equitable grounds for cancellation, there being no default on the part of the defendant, if the plaintiff breached the contract and refused to carry out his part of the same, the plaintiff could retain all money or property received without any agreement in the contract to such effect. The law does not permit one to take advantage of his own wrong or default. It is well settled by this court and other courts of the highest standing that the vendee in an executory contract for the purchase of lands, who, after paying part of the consideration under such contract, makes default and refuses to carry out the further terms agreed upon, cannot maintain an action to recover any of the consideration advanced. Helm v. Rone, 43 Okla 137, 141 Pac. 678; Snyder v. Johnson, 44 Okla. 388, 144 Pac. 1035; Hurley v. Anicker, 51 Okla.

97, 15 Pac. 593. From the authorities cited, it is clear that the plaintiff is not entitled to recover the money paid, or to have affirmative relief as to the note and mortgage, unless the defendant's answer may be considered such a rescission on his part as would entitle the plaintiff to recover.

In Snyder v. Johnson, supra, it is held that where a vendor in a contract for the sale of lands takes down a deed placed in escrow under such contract, after failure on the part of the vendee to carry out the terms of the contract, such act is not such a rescisson on the part of the vendor as will authorize the vendee to recover any part of the purchase price paid under the contract, and this court in such case approves the rule laid down in Battle v. Bank, 5 Barb. (N. Y.) 414, as follows:

"The cases in which a vendee is allowed to recover back the money paid on a contract for the purchase of real estate, where the contract has been rescinded are: First, Where the rescission is voluntary and by mutual assent of both parties, and without the fault or wrong of either; Second, where the vendor is incapable or unwilling to perform the contract on his part; or third, where the vendor has been guilty of fraud in making the contract."

The rule in Baston v. Clifford, 66 Ill. 67, 18 Am. Rep. 547, is substantially the same, and also has the stamp of approval of this court. In the case under consideration, the action is not based on the theory that the vendor is incapable or unwilling to perform, the question of fraud is eliminated from our present consideration, the defendant has not defaulted, and there is no wrong on his part so far as the trial court held. Therefore, in order to sustain the action of the trial court in rendering its judgment as modified, it must appear that defendant's pleading was a rescission; that it was voluntary and without default or wrong on the part of the plaintiff. In the first place, the pleading can hardly be called a rescission. After refusal of the plaintiff to further carry out his part of the contract, and after solemn repudiation of the same by an action in court, the defendant elected to terminate the contract and retain what he had received on the same. The pleading was wholly unnecessary, for without invoking the particular provision which, in its terms appeared to authorize such a course, he was entitled, in absence of any fraud proven, to have retained such property as he had received under the contract. But the fact that he offered the pleading would not necessarily confer any right on the plain-

tiff to affirmative relief. On the theory, however, that the pleading amounted to a rescission on the part of the defendant, it cannot be said with any show of reason that the rescission was voluntary, or that it was without fault on the part of the plaintiff. We are therefore of the opinion and so hold that the court erred in rendering judgment for plaintiff on the ground that the defendant had rescinded the contract, and that the plaintiff ought not to recover unless he has established by clear evidence actionable fraud on the part of the defendant. However, we do not pass on the question as to what would be the rights of the plaintiff in case, by action, the defendant sought to collect the $1,500 note and to enforce the mortgage given on the Canadian land. We are merely holding that, in the absence of fraud, the plaintiff, in the action brought by him, was not entitled to any relief.

This being an equity case, this court may review the entire record, determine from the evidence the rights of the parties, and render judgment accordingly. The plaintiff, having by his motion prevented the trial court from passing on the question of fraud, cannot complain if this court performs such duty and disposes of the case.

The testimony of the plaintiff does not show any substantial representations made by the defendant which proved to be untrue. His testimony does show that, prior to making the contract, he in company with the defendant and two other men walked together over practically the entire farm, examined the house and barn, the well, spring, orchard, and land, took a spade and dug into the soil, drank water from the well, and ate fruit from the orchard. He testified that at the time he was only inspecting the land with a view of renting it, but from the testimony of the other witnesses present the weight of the evidence is to the effect that he was acting with a view of purchasing. The plaintiff offered no witnesses residing in the vicinity of the land as to the soil, the rocks, the value of the land, its productiveness or fertility. He testified that he "backed out" of his contract because the land was not productive. On being asked how he knew it was not productive, he gave as his only reason that he had talked with men who knew where the farm was, but he offered no witness to show its nonproductiveness. The plaintiff testified that he was prevented from looking at a small portion of the land on account of defendant's misrepresentations. The defendant and two other witnesses who it

appears from the testimony were present during all the time the plaintiff was on the land say that no such conversation took place, and that plaintiff was encouraged to make a full inspection, and that plaintiff did so. The defendant on cross examination traced the route traveled over the land with the assistance of a plat, and the testimony thus elicited showed that he traveled over most of the land and made a thorough inspection. The representations claimed to have been made by defendant are disputed by the evidence, but, if made, there is little or no testimony to show that the material representations were not substantially true. The defendant introduced witnesses who qualified as experts as to knowledge of land and land values in the section of the country where the land is situated, and who showed themselves to be thoroughly acquainted with the particular land in controversy, the improvements, its productivity, physical aspect and value. Their testimony was to the effect that the improvements were worth several thousand dollars; that the land was productive; that there were but few rocks upon the same, except upon the hill near the spring, which it is admitted was pointed out to the plaintiff. Their testimony as to the value ranged from $9,000 to $12,000. The plaintiff did not introduce any witnesses who showed thorough familiarity with the land and no witnesses as to its value. The two witnesses for plaintiff mentioned, who visited the land when picnicking with their families, do not testify as to the value of the land, and their testimony as to other matters does not materially contradict that of other witnesses.

The fact that after the filing of the suit the plaintiff expressed his desire to take the land and made notes and mortgage for the balance of the purchase price of the same should be considered with the other testimony in this case. It is true the plaintiff claimed that the notes and mortgage were obtained by fraud; that it was represented to him that he was only signing papers so that the land could be sold to other parties. The testimony is unreasonable; he signed his name many times, to notes, interest coupons, and mortgage. His wife signed with him; hence she would have been a competent witness in his behalf, but her testimony was not offered. It appears that the plaintiff was an intelligent farmer who had accumulated considerable property. There is no evidence of imbecility, and it is strange that, after having been once defrauded, as he claims, by the defendant, he was so easily inveigled

again on the flimsy pretext to which he testifies.

In order to obtain relief on the ground of fraud, acts constituting fraud must be clearly established by the weight of the evidence. We have searched the record in vain to find some reason for equitable interference. Equity is quick to respond to the aid of the defrauded and oppressed, but equally slow to disturb contracts voluntarily made without the clearest and most convincing proof of reasons which appeal to the conscience.

The weight of the testimony is against the plaintiff. The cause is reversed, with directions to set aside the judgment and render judgment for the defendant.

By the Court: It is so ordered.