William J. JOHNSON and Patricia Johnson, Plaintiffs and Respondents.

v.

C. E. CARMAN aka Cal E. Carman, Defendant and Appellant.

No. 14807.

Supreme Court of Utah.

Nov. 8, 1977.

5. 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

Robert M. Mcrae, Salt Lake City, for defendant and appellant.

M. Matt Biljanic, Midvale, for plaintiffs and respondents.

MAUGHAN, Justice:

Defendant-appellant, a seller of real property to plaintiff-respondent under a uniform real estate sales contract, appeals from a decision of the Fourth Judicial District Court of Duchesne County. The lower court granted respondent-buyer damages of $8,845.00 in an action by respondent to recover part of the money paid under the contract. The court held that to enforce the forfeiture provision of the sales contract was unconscionable. Affirmed. Costs to respondent.

Appellant (hereafter referred to as seller) and respondent (hereafter buyer) entered into a uniform real estate contract on May 3, 1975 for the sale of real property in Duchesne County, Utah. The agreed upon price was $170,000.00. Payments were to be made as follows: $20,000.00 down payment on the date of execution of the contract and monthly payments of $1,477.11 for 12 months, beginning on June 15, 1975. After these 12 months a balloon payment of $15,000.00 would be due, followed by 12 more monthly payments of $1,477.11 and another balloon payment of $7,649.36. Following the second balloon payment the balance of the purchase price, together with interest at 8½% per annum would be paid in equal monthly installments of $1,428.57 for 120 months.

Buyer performed under the contract until the early part of 1976. By mutual agree-

ment the contract was altered on March 22, 1976. Buyer made the first payment under the altered contract on April 1, 1976 but then defaulted again. Buyer notified seller in May, 1976 he was unable to make any further payments, whereupon seller sent buyer a proper demand notice and buyer quit the premises on May 24, 1976.

Shortly afterward, buyer requested that he and seller arrange something about retaining buyer's equity. Seller refused and buyer requested permission to re-enter the property on June 3, 1976. Seller denied permission and buyer brought suit on June 17, 1976.

The trial court made findings of fact concerning the amounts paid by buyer as follows:

| | |
|---|---|
| Down payment | $20,000.00 |
| Payments on principal | 3,839.31 |
| Payments on interest | 10,756.79 |
| Total | $34,596.10 |

The court found that seller sustained the following damages:

| | |
|---|---|
| Interest on $150,000.00 to May 24, 1976, at 8½% per annum | $14,485.00 |
| Benefit of bargain | 5,500.00 |
| Attorney's fees | 1,165.00 |
| Reasonable cost to restore premises | 4,500.00 |
| Total | $25,650.00 |

The court, on these facts, held it unconscionable for seller to retain the entire sum paid by buyer. The court accordingly awarded the difference, viz., $8,845.00, as damages to buyer.

On appeal appellant contends the forfeiture clause of the uniform sales contract is valid and should be enforced.[1]

The law in Utah with respect to such provisions appears well settled. Last year in *Kay v. Wood*, Utah, 549 P.2d 709 (1976) we expressed the following regarding forfeiture provisions in real estate sales contracts:

This court has long been committed to the rule that parties to a contract may agree as to the amount of liquidated damages that shall be paid in the case of a breach, that the agreement is enforceable if the amount stipulated to is not disproportionate to the damages actually sustained. The provision in a contract for the sale of real property that all payments which have been made will be forfeited as liquidated damages will not be enforced if the forfeiture would be grossly excessive and disproportionate to any possible loss so as to shock the conscience.

See also *Perkins v. Spencer*, 121 Utah 468, 243 P.2d 446 (1952); *Jacobson v. Swan*, 3 Utah 2d 59, 278 P.2d 294 (1954); *Peck v. Judd*, 7 Utah 2d 420, 326 P.2d 712 (1958).

■ Although we do not purport to lay down any specific percentage which will be considered unconscionable, to allow the seller to retain the $34,596.10 paid by buyer when seller's actual damages amount to only $25,650.00 would be "grossly excessive and disproportionate to any possible loss." Such would be to allow seller to retain payments totaling some 34% greater than the actual damages determined by the trial court.

■ The Restatement of Contracts, section 339, cited with approval in *Perkins v. Spencer*, supra, is in accord with this position. That section states:

(1) An agreement made in advance of breach fixing the damages therefore, is not enforceable as a contract and does not affect the damages recoverable for the breach unless:

(a) The amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and

(b) The harm that is caused by the breach is one that is incapable or very difficult of accurate estimation.

In this case it appears the damages are fairly capable of accurate estimation. Since both (a) and (b) must be met the provision is not enforceable under section 339. The primary reason for the requirement that damages be difficult to estimate is that when they are ascertainable, exact

---

1. In this connection see *Carlson v. Hamilton* 8 Utah 2d 272, 332 P.2d 989 (1958), where the buyer elected to proceed pursuant to the contract.

damages determined at the time of breach will nearly always be more fair than those guessed at by the parties at the time of contracting. Such is certainly the situation here.

Appellant also contends the trial court used the wrong formula to compute seller's damages, and hence miscalculated the damage award to buyer. Specifically, seller relies on *Perkins v. Spencer*, supra, and the factors listed there to be used to calculate damages. Those factors were:

1. Loss of an advantageous bargain;

2. Any damage to or depreciation of the property;

3. Any decline in value due to change in market value of the property not allowed in items No's. 1 and 2;

4. For the fair rental value during the period of occupancy.

Although these are reasonable factors to determine damages, they were not meant to be a rigid formula to be applied mechanically in every case. In determining equitable damages, the trial court may use whatever factors it finds most appropriate to achieve justice. The court did use some of the factors suggested in *Perkins*. Here though, instead of using what may have been a speculative fair market value, seller was granted interest on the unpaid balance of the contract. The 8½% per annum rate used was one agreed upon by the parties in the contract.

We are not persuaded the trial court was not fair in its determination of the equities.

WILKINS and HALL, JJ., concur.

ELLETT, Chief Justice (dissenting):

The trial court erred in its findings relative to the damages sustained by the defendant. One of the principal elements of benefits received by the purchaser in possession of land is the reasonable rental value thereof. The trial court made no finding regarding that value. The purchaser had possession of the land for some thirteen months. There is a rule of thumb, generally recognized, that the rental value of property is one percent of the value for each month's use; also, there was testimony that the reasonable rental was between $1,500 and $1,700 per month. It thus would appear that since the value was $170,000 (sale price), the rental value would be between $1,500 and $1,700 per month; and for thirteen months the rental value should be in the neighborhood of $20,000 or more. This figure should be substituted for the interest figure used by the trial court. This would decrease the loss to the purchaser by more than $5,000 as found by the trial court. The amount of purchaser's damage then should be $3,845 instead of $8,845 as found by the court. This damage is only 2.2% of the total sales price.

In the case of *Carlson v. Hamilton*[1] a defaulting purchaser sued to recover his excess payments which amounted to 9½% of the purchase price. This court refused to allow recovery on the ground that a loss of 9½% was not enough to be shocking to the conscience. If 9½% is not shocking, how can 2.2% be considered so? The Plaintiff's standing to bring the action was neither raised nor considered in that case.

There is another problem as to whether a purchaser of real estate on contract can sue for a return of his payments when he himself is in breach thereof.

The main opinion cites cases where this Court has refused the seller the right to foreclose the interests of a purchaser without considering the equities of the purchaser.

This case is not in equity to foreclose the interests of the purchaser. This is a law action for money had and received. To permit this sort of a case to be considered is to encourage a purchaser to hold an interest in land and if the value thereof does not increase, to breach his agreement to pay, move out, and then sue for a return of his money. See the following cases which are in point: *Glock v. Howard and Wilson Colony Co.*, 123 Cal. 1, 55 P. 713 (1898); *Skookum v. Thomas*, 162 Cal. 539, 123 P. 363

---

1. 8 Utah 2d 272, 332 P.2d 989 (1958).

(Cal.1912); *Jackson v. Peddycoart*, 98 Okl. 198, 224 P. 689 (1924).

In the *Jackson* case the court said:

. . . Assignments Nos. 3 and 4 are based on the refusal of the court to give certain instructions, and assignment No. 5 is based on the giving of certain instructions by the court, and we will consider them all together. The second instruction requested by defendant is:

'You are instructed that, if you find from the evidence that the plaintiff failed and refused to tender the money to the defendant in payment of said land, in that event you will find for the defendant.'

We are inclined to think that this instruction should have been given. In the case of *Tucker v. Thraves*, 50 Okl. 691, 151 P. 598, it is held that, where a contract for the sale of land provides for the payment of the purchase price upon the approval of the abstract and the execution and delivery of a deed, each party must comply with the contract; and in the case of *Kershaw v. Hurtt*, 66 Okl. 117, 168 P. 202, the court says:

'In case of an executory contract being made for the sale and purchase of lands, the deed to be delivered upon payment of consideration as same becomes due, where the vendee fails to perform his part of the contract, there being no failure, fault, or wrong on the part of the vendor, the vendee cannot recover any money or property advanced under such contract, nor obtain, by way of original action, affirmative relief as to the cancellation of mortgage given on other land to secure a part of the consideration.'

And in discussing this question further in the opinion, the court said:

'The law does not permit one to take advantage of his own wrong or default. It is well settled by this court and other courts of the highest standing that the vendee in an executory contract for the purchase of lands, who, after paying part of the consideration under such contract, makes default and refuses to carry out the further terms agreed upon, cannot maintain an action to recover any of the consideration advanced. *Helm v. Rone*, 43 Okl. 137, 141 P. 678; *Snyder v. Johnson*, 44 Okl. 388, 144 P. 1035; *Hurley v. Anicker*, 51 Okl. 97, 151 P. 593. From the authorities cited it is clear that the plaintiff is not entitled to recover the money paid, or to have affirmative relief as to the note and mortgage, unless the defendant's answer may be considered such a rescission on his part as would entitle the plaintiff to recover.'

I would reverse the judgment in this case and order judgment of no cause of action for the defendant and award him costs.

CROCKETT, Justice (concurring in the dissent of ELLETT, C. J., but with reservation):

Caution should be observed that the courts do not interfere with the right of freedom of contract, which is of course a valuable property right and an important aspect of individual liberty, which should not be lightly interfered with. That principle is invariably recognized in our cases, including *Perkins v. Spencer* and *Jacobson v. Swan*, referred to in the main opinion. One modification of the foregoing is that if the literal enforcement of a forfeiture provision in a contract would produce a result so entirely disproportionate to any loss or damage which has occurred, or was reasonably to be contemplated, that it amounts to a wholly unreasonable and burdensome penalty on the defendants, and a commensurate unjustifiable enrichment to the plaintiffs, so that to enforce it would be so revolting to the court's sense of fairness and justice that it shocks his conscience, then only will the court exercise its equitable prerogative and refuse to enforce such a penalty.

In the instant case I agree with the analysis of Chief Justice Ellett and with his opinion that there is no basis therein upon which it could reasonably be concluded that the enforcement of the contract would fall within the rule just stated and so shock the conscience that the court should not enforce the contract. However, I reserve concur-

rence with the second part of his dissenting opinion. I do not exclude the possibility that there may be circumstances where a party may have defaulted, or for other reasons ceased to perform a contract, or may even have relinquished possession of purchased property, but where the application of the principles set forth above may justify a court in exercising its equitable prerogative in refusing to enforce the penalty or to grant equitable relief therefrom.