[Civ. No. 886. Third Appellate District.—January 27, 1912.]

L. W. HOPKINS, Appellant, v. MARY E. LEWIS, Respondent.

SPECIFIC PERFORMANCE—CONTRACT FOR LAND WITH VENDOR'S AGENT— ABSTRACT—ABSENCE OF EXPRESS PROMISE—INACTION FOR SIX YEARS—CAUSE OF ACTION NOT STATED.—Where a contract to purchase land was made with a corporation, which was the vendor's agent, which referred to an abstract, with right to search title after its delivery, but contained no express promise to furnish an abstract, after an inaction of six years, during which no abstract was demanded, and during which the vendor had no knowledge of the existence of the contract, the rights of the purchaser must be determined by the contract with the agent, and a complaint for specific performance against the original vendor, after such inaction, which does not allege that the contract of purchase was intended to include a contract with the agent to furnish an abstract, states no cause of action.

ID.—RETURN OF DEPOSIT NOT NEGATIVED—FAIR INFERENCE FROM FACTS —CONCLUSION NOT TO PURCHASE.—Where the contract provided for a release of the contract and a return of the deposit if title was not shown by an abstract and was not made good, and the complaint does not allege what became of the deposit, and if the agent did its duty, the deposit was long ago returned and the transaction ended; and in view of all the facts appearing, it seems a fair inference therefrom that the plaintiff made up her mind not to purchase the property, or she would not have waited six years for an abstract without any demand therefor.

ID.—EFFECT OF IMPLIED OBLIGATION TO FURNISH ABSTRACT—REASONABLE TIME—RIGHT TO WITHDRAW—RUNNING OF STATUTE.—If it may be said that there was an implied obligation on the part of the vendor defendant to furnish the abstract, there being no time stated in which to perform this duty, the law would have given the defendant but a reasonable time therefor, and at its expiration the plaintiff would have the right to withdraw from the contract, and the statute of limitations would also, at the same time, begin to run against the enforcement of the contract.

ID.—BAR OF STATUTE—ACQUIESCENCE IN DEFAULT OF DEFENDANT.—In view of such implied obligation, the action would be barred by limitation. The plaintiff could not keep silent for six years, asserting no right whatever, making no demand for an abstract, expressing no willingness to complete the purchase, and doing no act in furtherance of her original purpose, without giving rise to the

presumption that she had acquiesced in defendant's default, and justifying defendant in so treating her contract.

ID.—GENERAL RULE AS TO ACQUIESCENCE IN BREACH OF CONTRACT OF PURCHASE—PRESUMPTION OF ABANDONMENT OF SPECIFIC PERFORMANCE.—Notwithstanding defendant's violation or express repudiation of his contract to sell land to the plaintiff, where the plaintiff delays to proceed for such length of time as to constitute acquiescence in defendant's breach, or a presumption of abandonment of his right to a specific performance, relief in equity for its enforcement will be denied.

ID.—LACHES—GENERAL DEMURRER.—The question of the plaintiff's laches may be raised by general demurrer to the complaint in equity, without specifying therein the laches of the plaintiff. It may be raised on the ground that the complaint does not show any ground for relief in equity, or, under the statute, does not state facts sufficient to constitute a cause of action.

APPEAL from a judgment of the Superior Court of Sonoma County. Emmet Seawell, Judge.

The facts are stated in the opinion of the court.

Lippitt & Lippitt, for Appellant.

Wm. B. Haskell, for Respondent.

CHIPMAN, P. J.—Action to enforce the specific performance of a contract for the sale and purchase of land. A demurrer to the second amended complaint for want of sufficient facts and that the action is barred by sections 337 and 343 of the Code of Civil Procedure was sustained, and, plaintiff declining further to amend her complaint, defendant had judgment, from which plaintiff appeals.

It appears from the amended complaint that on April 8, 1904, defendant executed and duly acknowledged an instrument in writing whereby she authorized and empowered Horn-Sinclair Co., a corporation, as her agent to sell certain described lots situated in Petaluma, "for the period of until sold from the date hereof, and thereafter, until said agency is withdrawn in writing, for the sum of $300 net ($300) dollars." The contract further provides that defendant will pay said company "upon finding a *bona fide* purchaser for said property —— per cent of the selling price." There is a further

provision relating to the compensation of said company, not now important, which closes as follows: "Undersigned agrees to furnish abstract of and give perfect title to said property. Should title to said property be defective, undersigned shall, with all reasonable diligence, perfect the same." Duly recorded April 18, 1904. It is then averred that, acting for and on behalf of defendant, as her agent as aforesaid, the said company, by an instrument in writing, sold said land to plaintiff on April 8, 1904, and plaintiff agreed to buy the same, as follows: "Received from L. W. Hopkins the sum of one hundred dollars in gold coin, on account of and as a deposit, to secure the sale to her at the price of $600—dollars in gold coin the following described property, viz.:" (the land in question) on the "following terms, to which both parties are mutually bound: $100—cash deposit paid to-day and the balance of $500—to be paid in cash upon receipt of a deed and perfect title. 10 days are to be allowed for legal search of title after the delivery of complete abstract. If title is not found perfect, thirty days are then to be allowed to make it perfect; and if it is not made perfect in that time, the deposit for which this is a receipt is to be immediately returned. Time is of the essence of this contract. If the title is found perfect and the sale is not closed in accordance with above terms, the deposit is to be forfeited, as fixed and settled damages, and not as a penalty." This memorandum is signed by J. W. Horn, and there is an averment that he was the president of said corporation and executed the contract for the corporation, and as part of said instrument the following appears:

"Petaluma, Cal., April 8, 1904.

"I hereby bind myself to buy the within-described property at the price and on the terms named herein; hereby agreeing to pay the balance of the purchase-money as specified above, but only if the title is found perfect. If the title is not found perfect, the seller then is to be allowed thirty days to make the title perfect and if it is not made perfect within that time I am released from this contract, and my deposit is to be at once returned. L. W. Hopkins." It is then averred that "defendant has never at any time since the 8th day of April, 1904, furnished an abstract of title to the property described in the agreement, set forth in paragraph II (the first of the foregoing documents) and, on the 16th day of December, 1909,

the plaintiff made a written demand upon the defendant requiring the defendant to procure and furnish to the plaintiff for her use, an abstract of title of the lands and premises described, and the defendant has failed, refused and neglected to furnish the abstract of title, as agreed upon by her by the terms of said written agreement'' (the agreement first above referred to). It is then averred that, on March 15, 1910, the said corporation, on behalf of plaintiff, served a written notice on defendant (which is set out in the complaint) informing defendant of the sale and its terms, made to Hopkins on April 8, 1904, and further informing her that said Hopkins "has this day [March 15, 1909] paid to us the balance of $500, and has waived the furnishing of the abstract of title which she heretofore and on the 16th day of December, 1909, demanded of you.'' Then follow averments of tender of $600 and a deed conveying the property to Hopkins and a demand that defendant execute and deliver said deed to said Hopkins. Plaintiff, Hopkins, in writing, as part of the foregoing paper, joins in the tender of the $600 and demand for a deed. It is further averred that, on April 2, 1910, plaintiff tendered to defendant $600 and a deed duly prepared and demanded its execution by defendant, and that defendant refused to execute the same. Ability and willingness to pay the purchase price is averred and that a deposit of said amount has been made in a bank at Petaluma for the purpose of paying said purchase price. It is also averred that the price agreed to be paid for said lands was just and reasonable and the value of said lands; that the said contract, first above referred to, was entered into by defendant without any misrepresentation or unfair practice of any person, and that ever since said April 8, 1904, defendant has been, and now is, the owner of said land, and has been and is able to make and deliver plaintiff a deed thereto.

It seems to be conceded by both parties that the demurrer was sustained because the action was barred either by laches or by the provisions of the code sections referred to, or both. No other ground for the decision is discussed in the briefs.

Plaintiff's position is that there was an obligation on defendant to furnish an abstract of title as a condition precedent to any act of plaintiff by way of tender or demand of deed and, until such abstract was furnished, the statute of limita-

tions was not set in motion; that plaintiff might have waived
the condition precedent, as she did in March, 1910, thus set-
ting the statute in motion, but that until such waiver or until
defendant had complied with the condition of the contract
and furnished the abstract, the time within which an action
for specific performance should be commenced did not run.
The principle relied upon is thus stated in 25 Cyc. 1067:
"Generally speaking, where a party's right depends upon the
happening of a certain event in the future, the cause of action
accrues, and the statute begins to run only from the time."

The corporation was the agent of defendant and as such
made the contract with plaintiff, but the contract of defend-
ant with her agent is distinct from that made with plaintiff.
In the contract of agency there was a provision that defendant
would furnish an abstract, but no such promise was made by
the agent in its contract with plaintiff, and it is not alleged
in the complaint that its agreement with plaintiff was in-
tended to include such promise. The language is: "10 days
are allowed for legal search of title after the delivery of
complete abstract," but by whom this abstract was to be made
and at whose cost, or when, does not appear by the contract
nor by any averments of the complaint. The plaintiff, in
her complaint, refers to the agency contract, but it formed
no part of her contract or of the terms on which she agreed to
make the purchase. The agent could have agreed to furnish
an abstract, for it was so authorized, but it did not do so.
It nowhere appears in the contract with plaintiff or in the
complaint that she knew anything about the terms of the
agency contract or acted with reference thereto. So far as
we can see, plaintiff's rights must be determined upon her
contract with defendant's agent. It does not appear that
either the agent or plaintiff took any steps toward consum-
mating the sale, after the contract was entered into, for nearly
six years. It does not appear that defendant knew, until
in 1910, that the agent had made a sale to plaintiff, nor does
it appear that either the agent or plaintiff made any demand
on defendant for an abstract, or that plaintiff made any
such demand on the agent, until after this long lapse of time.
It may be true, as alleged in the complaint, that the price
agreed upon "was an adequate consideration for the land" at
the time the agreement was entered into, and that the land

was not then of value "greater than the amount set forth in said agreement," but that does not throw much light on its value six years later. This fact, however, might not be material if defendant had failed to perform her part of the agreement and plaintiff had fully performed her part. But we have here the contention of plaintiff that under the agreement she could remain inactive for an indefinite period and could come forward twenty years after the contract was entered into and demand a deed if defendant had failed to furnish an abstract. We cannot believe she had any such right. Under her contract she was given "ten days for legal search of title after the delivery of complete abstract." This probably means that after an abstract had been made by someone ten days were given to have it passed upon by some competent lawyer. If the title was not found perfect, thirty days were "allowed to make it perfect; and if it is not made perfect in that time, the deposit for which this is a receipt is to be immediately returned," or, as plaintiff expressed it in her indorsement: "I am released from this contract, and my deposit is to be at once returned." It does not appear in the complaint what became of this deposit. If plaintiff insisted on her rights and if the agent did its duty, this deposit was long ago returned to plaintiff and the transaction ended.

It seems to us a fair inference from all the facts, so far as disclosed, that plaintiff made up her mind not to purchase the property or she would not have waited six years for an abstract which she now says it was defendant's duty to have furnished at least within a reasonable time, there having been no stated time named for its delivery. The equities of the case may be seen if we reverse the parties and suppose the defendant (having knowledge of the contract, which she did not), after six years of inaction, had, without any explanation or cause for her delay, come forward with an abstract showing perfect title. No court would have enforced the contract against plaintiff. But if it may be said that there was an implied obligation on defendant's part to furnish the abstract, there being no time stated in which to perform this duty, the law would have given defendant but a reasonable time and, at its expiration, plaintiff would have had the right to withdraw from the contract. The statute would also at

that time have begun to run against the enforcement of the contract.

In that view we think the action would be barred. Plaintiff could not keep silent for six years, asserting no right whatever, making no demand for an abstract, expressing no willingness to complete the purchase, doing no act in furtherance of her original purpose, without giving rise to the presumption that she had acquiesced in defendant's default and justifying defendant in so treating her contract. In *Marsh v. Lott,* 156 Cal. 643, 648, [105 Pac. 968], the court states the rule to be, as given in 26 American and English Encyclopedia of Law, page 80, that where, after defendant's violation or an express repudiation of his contract, the plaintiff delays to proceed for such length of time as to constitute acquiescence in defendant's breach, or a presumption of abandonment of his right to specific performance, relief in equity will be denied. We think the facts here bring the case within this rule.

The question of plaintiff's laches could be raised by the general demurrer without specifically alleging laches. It was said in *Kleinclaus v. Dutard,* 147 Cal. 245, 250, [81 Pac. 516, 517]: "It is settled in this state by the two California cases last cited that the defense of laches may be raised by demurrer, the defense being in substance, as said in one of the cases, that the bill does not show equity, or, in the language of our statute, that the complaint does not state facts sufficient to constitute a cause of action." It would seem to be logical that, if laches shows want of sufficient facts, an averment of want of facts could be supported by showing laches. (See, also, *Marsh v. Lott,* 156 Cal. 643, [105 Pac. 968].) We are unable to discover any ground on which the complaint may be held sufficient.

The judgment is affirmed.

Hart, J., and Burnett, J., concurred.