[Civ. No. 1634.   Third Appellate District.—March 27, 1917.]

GEORGE A. GROTEFEND, Respondent, v. EDWARD F. MAY et al., Surviving Trustees of Trinity Dredging and Hydraulic Gold Mining Company (a Corporation), Appellants.

AGREEMENT CONCERNING LAND PATENT—NATURE OF INSTRUMENT—CONTRACT OF SALE — SPECIFIC PERFORMANCE — BAR BY LACHES.—An agreement between conflicting claimants for a patent to certain mineral lands that an action pending to determine the right to the lands should be dismissed and that the defendant should proceed to obtain the patent, and that when obtained a conveyance should be made to the plaintiff of a portion of the lands, does not create an express trust against which the statute of limitations does not run until the refusal to convey, but is in effect a contract for the conveyance of land, the right to specifically enforce which is barred by laches, where no demand for a deed or action is commenced to enforce the contract until eight years after the obtaining of the patent.

APPEAL from a judgment of the Superior Court of Trinity County.   J. W. Bartlett, Judge.

The facts are stated in the opinion of the court.

W. C. Sharpstein, for Appellants.

Thomas B. Dozier, for Respondent.

HART, J.—The following, extracted from the initial brief of the appellant, comprehends a complete and an accurate statement of the facts of the controversy presented for solution by this appeal:

"The second amended complaint alleges two causes of action, both of which, however, are founded on a single written instrument, Exhibit A, which is annexed to the pleading.

"It appears therefrom and from the allegations of the first cause of action that the Trinity Dredging and Hydraulic Gold Mining Company, to which we shall hereafter refer as 'the corporation,' was an applicant before the local United States Land Office for a patent to certain mineral lands, including the premises in controversy; that plaintiff filed an adverse to

said application as to practically all of said land, including the premises in controversy, and commenced an action in the superior court pursuant to Revised Statutes U. S., sec. 2326, [5 Fed. Stats. Ann., p. 35, U. S. Comp. Stats. 1916, sec. 4623], 'to determine the question of the right of possession' to the lands embraced in said adverse; that while said action was pending the parties to it entered into an agreement by the terms of which plaintiff was to dismiss said action and his adverse, the corporation was to proceed with its application for patent upon the issuance of which it was to convey the premises in controversy to plaintiff free of encumbrance, who was thereupon to pay the corporation fifty dollars in cash and deliver to it his promissory note for fifty dollars, without interest, payable in six months; that pursuant to this agreement plaintiff did dismiss said action and his adverse, and the corporation prosecuted its application for patent with the result that the patent was issued June 30, 1906; that on November 30, 1907, the corporation became dissolved for nonpayment of the corporation license tax and the defendants are the survivors of the directors of the corporation in office at the date of the dissolution; that on April 30, 1914, plaintiff tendered performance on his part and demanded of defendants the deed provided by the agreement, which demand was refused; that this action was commenced May 15, 1914.

"The second cause of action omits all reference to the adverse proceedings by plaintiff in the land office and in the court, but in lieu thereof alleges that the corporation agreed to sell to plaintiff the premises in controversy upon receipt of the patent. Otherwise the allegations are identical with those of the first cause of action."

The defendants interposed a demurrer to each of the causes of action stated upon the grounds: 1. That there was no cause of action stated; 2. That the cause of action was barred by the provisions of sections 337, subdivision 1, and 343 of the Code of Civil Procedure; 3. That the plaintiff has been guilty of laches.

The demurrer being overruled, the defendants answered, and thus, without denying the allegations of the complaint, pleaded the statute of limitations, basing said plea upon the sections of the Code of Civil Procedure invoked and specified in the demurrer; and also pleaded laches.

It was stipulated by the parties that the cause be submitted to the trial court for its decision upon the second amended complaint and the answer thereto, it being further stipulated, in support of the allegations of the answer, that the original complaint in the action was filed and said action commenced on the nineteenth day of May, 1914.

Findings were by said stipulation waived and it was further stipulated that "this stipulation shall form a part of the judgment-roll."

Upon the issues framed as indicated and the above-mentioned stipulation, the court rendered and entered its judgment, decreeing and adjudging that the defendants, within thirty days from and after "the date of service of notice of entry of this decree, make, execute, acknowledge, and cause to be certified, a good and sufficient deed, conveying and assuring the title, and all of the title" to that portion of the lands referred to in the complaint which is described as the N. E. ¼ of the N. W. ¼ of section 28, Tp. 36 N., R. 7 West, M. D. M., situated in the county of Trinity.

This appeal is prosecuted by the defendants from said judgment.

It will be observed from the above statement that the parcel of land in controversy is a fractional portion of all the lands mentioned in the complaint, and that the adverse filed by the plaintiff to the application of the defendants for a patent involved all of the lands so mentioned and described, "save and except the N. E. ¼ of the N. W. ¼, and the E. ½ of the W. ½ of the N. W. ¼ of section 28, Tp. 36 N., R. 7 W., M. D. M.," within which section all the lands described in the complaint are situated.

The questions submitted for decision by this appeal, as must be obvious from the above statement of the issues, are whether the causes of action set out in the complaint are barred by the provisions of the statute of limitations invoked and pleaded by the defendants or by the laches of the plaintiff.

As seen, the first cause of action stated proceeds upon the theory that the corporation, in prosecuting its application for and obtaining a patent to the land in dispute, acted for and in behalf of the plaintiff and that, upon securing the patent, it became the holder of the legal title in trust for the plaintiff. In other words, the contention is that by the agreement an express trust was created. It is, hence, argued that, since

the statute of limitations cannot run against a trust until the repudiation thereof by the trustee, and, inasmuch as there was no repudiation of said trust until the thirtieth day of April, 1914 (fifteen days preceding the commencement of this action), the statute cannot be invoked to defeat the plaintiff's right of action.

In the second count or cause of action, the complaint, as shown, alleges that by the written agreement referred to the corporation agreed to sell and the plaintiff agreed to purchase the land in question upon the issuance to the former by the general government of a patent to said land. Thus a contract for the purchase and sale of the property is stated.

The plaintiff, however, relies mainly upon the theory upon which the first cause of action proceeds, and, while we may properly assume that the decision of the trial court was founded upon said theory, we are of the opinion that, in either case, the plaintiff's cause of action has lapsed by reason of laches.

Although the plaintiff has set up two different causes of action under the written agreement upon which the action is founded, we must, nevertheless, determine the nature of the cause of action which is available to him under the contract upon which he declares from the nature of the contract itself. (*Burling* v. *Newlands,* 112 Cal. 476, 494, [44 Pac. 810].) Thus considering and viewing the action, we are constrained to the opinion that it is not, nor could it be, under the agreement, one for the enforcement of an express trust, as counsel for the plaintiff contend, but merely one for the specific performance of the terms of a contract whereby a prospective vendor has agreed, for a specified consideration, to convey to a prospective vendee a certain parcel of land, after the former had acquired title thereto. In other words, we are unable to perceive in the contractual relation established between the parties by the agreement the essential elements of an express trust. Of course, in a sense, there existed between the parties a trust relationship. Nearly all contracts and every agency embrace a trust relationship, but it does not follow that in all such contracts or agencies an express trust is created or that the running of the statute is affected thereby. (*Boyer* v. *Barrows,* 166 Cal. 757–759, [138 Pac. 354].) Here neither of the parties, although claiming a conflicting priority of right to purchase the land, was vested with the

legal title, the perfection of which in either the one or the other rested upon the event of the prosecution to completion of the requisite proceedings before the land department of the general government. The plaintiff withdrew his application or adverse, and when this was done and the suit arising thereon dismissed, the parties in legal effect conceded that the land in contest was the property of the corporation, subject, of course, to the paramount title of the government. Thereupon the agreement or contract between the parties supervened, which alone formed the basis of any right of action in the plaintiff. (*Stevens* v. *McCrystal,* 150 Fed. 85, 87, [80 C. C. A. 39].) The agreement, however, bears a close analogy to and is, in effect, one whereby the parties agreed to join in the acquisition for their joint benefit of a certain parcel of land, the one to obtain the legal title and thereupon, for a stated consideration, to convey to the other an interest therein. (*Boon* v. *Chamberlain,* 82 Tex. 480, [18 S. W. 655].) In that case, the parties had entered into an agreement for the joint acquisition of land, one of the parties impliedly agreeing that, upon securing the legal title, he would convey to the other a half interest therein. The point submitted for decision was whether the action was one for the specific performance of a contract for the conveyance of real property and, therefore, subject to the operation of the statute of limitations as to such actions, or whether the agreement, which formed the basis of the action, created an express trust and the action thereon not barred until there had been a repudiation of the trust. The Texas court thus disposed of the respective contentions of the parties:

"Was the contract between, Clark and appellant a contract for the conveyance of real estate? We think it was. It is true that it was a contract for the joint acquisition of lands and not a contract for the sale of lands. It is none the less true that by its terms Clark impliedly bound himself to convey to appellant a half interest in the land as soon as he acquired the legal title. This suit seeks to enforce that contract; that is to say, to have it specifically performed. . . .

"The last question which suggests itself in this case is, When did the cause of action accrue? Did it arise as soon as Clark acquired the legal title, or not until there was some act repudiating the trust? In suits for specific performance of contracts to convey land the cause of action accrues upon

the happening of the condition upon which the vendor binds himself to make the title. (*Glasscock* v. *Nelson,* 26 Tex. 150.) And so in the case of a contract for the joint acquisition of land, in which it is contemplated that one party shall acquire the title and convey an interest to the other, we see no reason why the latter may not sue as soon as the title is acquired. It may be that, by reason of the trust existing between the parties, equity would not hold the plaintiff guilty of laches until the defendant had done some act which showed that he no longer recognized the trust. Yet the defendant binds himself to make the title to the plaintiff for his interest in the land as soon as he acquires title himself, and we are of opinion that upon a mere failure to do so a cause of action arises.'' We can perceive no substantial distinction between the agreement in the Texas case and that with which we are here concerned.

The cases cited by the respondent are not conceived to be in point here. For instance, the cases of *Love* v. *Watkins,* 40 Cal. 547, [6 Am. Rep. 624], and *Luco* v. *De Toro,* 91 Cal. 405, [18 Pac. 866, 27 Pac. 1082], cited by respondent, were where the parties who were to receive the conveyances had rendered services which were the consideration for the deeds. But in neither of those cases did the agreement create an express trust. Of course, a resulting trust arose and this from the nature of the transaction—not only because of the nature of the agreement, but by reason of the fact that the party to receive the conveyance had performed or executed the consideration for the deed.

In the instant case no money was paid nor service performed as a consideration for the conveyance. Indeed, it does not appear that the plaintiff paid any part of the expense incident and essential to the prosecution of the claim for a patent. There was no relation of confidence subsisting between the parties at the time of the making of the agreement. They were, in fact, in antagonism with each other relative to the contested land until the agreement was entered into between them. Recapitulating, the transaction simply amounted to this: That each of the parties claimed the prior right to apply for a patent. One withdrew his claim and the other agreed that, upon obtaining the patent, he would convey to the former for a specified consideration a certain portion of the land so obtained. As before stated,

we can discern in this transaction nothing more than either a mere agreement for the sale of real property or one for the joint acquisition of real property by the parties for their joint benefit.

But it is claimed that the fact that the effect of the agreement was to create an express trust is evidenced by the recital therein that "the parties hereto have reached an agreement and understanding as to the rights of the several and respective parties." The complaint, however, nowhere directly alleges that the corporation ever at any time acknowledged or conceded that the plaintiff was the owner or entitled to the property described in the agreement. Assuming, therefore, that the recital referred to was amenable to the interpretation to which the plaintiff subjects it, it cannot be considered as in aid of or as supplying pretermitted averments essential to the making of that proposition an issue. In *Hayt* v. *Bentel,* 164 Cal. 680, 686, [130 Pac. 432, 434], a similar point was made. The court said: "But there is no allegation, in either the complaint or the answer, that plaintiff ever did receive or take possession of the lot. The contract is annexed to the complaint and made a part thereof. But all that is *averred* is that the parties made an agreement for possession, not that possession was in fact delivered. Recitals in a contract incorporated in a complaint will not supply the want of essential averments in the pleading," citing a number of cases. The reason underlying this rule is that it is only by inference or argument from the recital in the contract that it can be assumed that the fact to which the recital relates existed, "and the rule is as much in force under the code as at common law that argumentative pleading is not admissible." (*Hibernia S. & L. Soc.* v. *Thornton,* 117 Cal. 481 [49 Pac. 578].)

No reason is to be perceived for doubting that the agreement upon which this action is predicated is a "writing" within the contemplation and meaning of section 337, subdivision 1, of the Code of Civil Procedure; and, while we are of the opinion that a cause of action arose in favor of the plaintiff *eo instanti* upon the acquisition of the legal title to the land by the corporation (*Gray* v. *Dougherty,* 25 Cal. 266, 282; *Danielson* v. *Neal,* 164 Cal. 748, [130 Pac. 716]), and that, therefore, no demand for performance was necessary to start the statute to running, yet, assuming that a demand

was necessary for that purpose, the proposition remains that such demand should have been made within a reasonable time after the acquisition by the corporation of the legal title to avoid the intervention of the presumption of the abandonment of the agreement. "Where a party's right to sue depends for its perfection solely upon the necessity of a demand by him to put his adversary in default, he cannot indefinitely and unnecessarily extend the bar of the statute by deferring such demand, but must make it within a reasonable time." (*Thomas* v. *Pacific Beach Co.,* 115 Cal. 136, 142, [46 Pac. 899]; *Palmer* v. *Palmer,* 36 Mich. 494, [24 Am. Rep. 605]; *Hintrager* v. *Traut,* 69 Iowa, 746, [27 N. W. 807]; *Steel* v. *Steele,* 25 Pa. St. 154; *Bills* v. *Silver King Mining Co.,* 106 Cal. 9, [39 Pac. 43]; *Hopkins* v. *Lewis,* 18 Cal. App. 107, 113, [122 Pac. 433].)

Conceding, then, that a demand was necessary in this case, the question arises: Was the demand made within a reasonable time? The answer must be in the negative.

What is a reasonable time in a given case must always depend, of course, upon the circumstances thereof; and, in determining this question where the contract is for the sale of property, and where, as is so in this case, there is no express provision in the contract fixing the time within which the conveyance is to be made, some consideration is to be given to the character of the property which is the subject of the contract, although the general rule is that whether time is of the essence of the contract is to be determined from the terms of the writing itself. (*Skookum Oil Co.* v. *Thomas,* 162 Cal. 539, 546, [123 Pac. 363].)

Judge Lindley, in his treatise on Mines, volume 2, section 859, says: "The authorities, both in England and America, recognize that where mines or mining property are the subject of the contract time is of the essence, independent of any express stipulation inserted in the instrument."

In *Waterman* v. *Bates,* 144 U. S. 394, [36 L. Ed. 479, 12 Sup. Ct. Rep. 646], one of the syllabi reads: "Time may become of the essence of a contract for the sale of property, not only by the express terms of the parties, but from the very nature of the property itself; mining property requires the parties interested in it to be vigilant and active in asserting their rights." This rule is approved in *Skookum Oil Co.* v. *Thomas,* 162 Cal. 539, [123 Pac. 363]. The reason of

this rule is that mining property is of that peculiar character that it is subject to frequent, sudden or great fluctuation in value, and to permit an advantage to be gained or great loss to be suffered by long and unreasonable delay in demanding a conveyance or the money stipulated to be paid for such land would constitute the transaction an unconscientious one.

Under the above-stated principles, and the facts as they are made to appear here, the conclusion is inevitable that the plaintiff, by postponing the taking of steps looking to the acquisition of his rights under the contract, was guilty of laches, and that by reason thereof his right of action on the contract is barred. (*Marsh* v. *Lott,* 156 Cal. 643, 648, [105 Pac. 968]; *Hopkins* v. *Lewis,* 18 Cal. App. 107, 113, [122 Pac. 433].)

The land involved in this controversy is admittedly mining property. By the agreement, as we have seen, the corporation bound itself to convey to the plaintiff *when* it acquired title to the land. This agreement necessarily implied that at the same time the plaintiff would perform his part of the contract. And thus the time was definitely fixed when either, by offering to perform the condition to which he had bound himself, could put the other in default. The corporation failed to perform its obligation, and, of course, the plaintiff knew it. He further knew, or at least was well justified in assuming, from the fact that the corporation was as against him an applicant for a patent to the land, that the latter desired to retain it, and this, too, notwithstanding its agreement to relinquish the title to him after the patent was received. If, then, it was his intention or desire to secure the conveyance, he should have been active and vigilant in the matter of the enforcement of his rights thereunder, and not have been guilty of that procrastination or inaction or passiveness which will be held to constitute acquiescence in the breach of a contract of this character or to raise the presumption of the abandonment thereof. Nor has he shown any admissible reason or valid excuse for his long period of inaction and passiveness.

A court of equity does not encourage the litigation of stale claims. It will not grant aid to those who slumber upon their rights. Nothing can call that court into activity but conscience, good faith and *diligence,* and where these (or

any of them) are wanting, it will remain passive and do nothing.

It is further to be suggested that it is to be presumed, from the fact that the title to the property has been in the corporation or its successors (the trustees) during the entire period intervening between the date of the issuance of the patent to the corporation and the date upon which the plaintiff for the first time made a move to secure a conveyance, that the corporation and its successors have paid the annual taxes accruing against said property. The agreement provides that the corporation shall convey the property to the plaintiff "free and clear of all encumbrances," which include taxes and assessments levied upon and against property. (Civ. Code, sec. 1114.) It will hardly be contended that the agreement contemplates that the corporation should be charged indefinitely with the payment of the taxes levied against the property, and, since the duty or obligation of taking the initiative in the consummation of the agreement rested upon the one no less than upon the other of the parties thereto, it would seem that the failure of the plaintiff to offer to pay the taxes which had presumably been paid by the corporation upon the property for over seven years, means a failure to offer to do complete equity in the premises.

The appellant makes a number of other points in impeachment of the judgment, but, as we believe the action here is barred by *laches,* those points need not be considered.

The judgment is reversed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 24, 1917.