[Civ. No. 7100.   Third Dist.   Jan. 11, 1945.]

JOHN KERSCH, Respondent, v. ROY I. TABER, Appellant.

L. N. Lorenzen for Appellant.

C. J. Luttrell and Floyd Merrill for Respondent.

THOMPSON, J.—The plaintiff brought suit in assumpsit for repayment of $1,500 advanced to defendants upon a written contract to purchase from the owners a specified mining claim in Siskiyou County. The contract provided that said money was to be used for the "purchase of said mine and for no other purpose whatsoever." The contract contained no specific limitation of time within which the mine was to be purchased. After the lapse of nearly fourteen months,

during which time the defendants made no effort to acquire title to the mine, and after notice of said breach of contract, this suit was commenced. The defendants answered the complaint, admitting the execution of said written contract and receipt of said sum of $1,500 on February 4, 1942, but alleged that "said agreement . . . was and is a partnership agreement" and that they were not indebted to plaintiff for said sum, or any portion thereof. By leave of court the defendants filed an amendment to their answer alleging by way of estoppel that plaintiff subsequently waived the provision of the contract requiring said sum of money to be used for the purchase of the mine, and asserting that plaintiff requested defendants not to use the money for that purpose. The cause was tried by the court sitting without a jury. Findings were adopted favorable to the plaintiff in every respect. Judgment was rendered accordingly. From that judgment the defendant Taber, only, has appealed.

In his opening brief the appellant concedes "that the $1500.00 was to be used for the full purchase price of the mine;" that "the funds advanced by Mr. Kersch were not used in the purchase of the mine," but "were used for the purpose of paying certain creditors of Major White," the original lessee of the mine. As grounds for reversal of the judgment the appellant contends that since the contract is silent with respect to the time within which the mine was to be purchased the law allows a reasonable time for performance, and that it is unreasonable to hold that the lapse of fourteen months constitutes a breach of the contract. It is also asserted the judgment is not supported by the evidence for the reason that said payment of $1,500 was a contribution to a partnership interest in the mining enterprise, and not a mere advancement of funds for the exclusive purpose of purchasing the mining property.

It appears that Fidelity Metals Corporation, a Nevada corporation, owned the "Schroeder Mine" in Siskiyou County, which, on May 18, 1939, was leased to Major H. A. White for mining purposes, with an option to purchase it for the sum of $75,000. That lease and option was assigned to George C. Phares, one of the defendants in this action, on January 30, 1942. The consideration for that assignment was the agreement to pay to White the sum of $8,000, as follows: $1,150 cash; $500 on February 14, 1942; $1,350 on July 30, 1942;

$2,000 on October 30, 1942, and the remaining $3,000 in royalties to be paid monthly at a specified rate. Mr. Phares took possession and operated the mine for a short period of time. Mr. White testified, "They carried on for about three months." February 4, 1942, the defendants, Phares, Denning and Taber, executed with plaintiff the written agreement to purchase the mining claim, in consideration for the advancement of the sum of $1,500, which is the subject of this litigation. We assume that Denning and Taber were jointly interested with Mr. Phares in the assignment of lease from White. The agreement, upon the terms of which plaintiff advanced said $1,500 to the defendants, provides in part:

"WHEREAS, Roy I. Taber, George C. Phares and Dan C. Denning, parties of the first part, are the purchasers of, *or are about to become the owners of a certain mine,* mining equipment and improvements in that certain mine situated in the County of Siskiyou, State of California, commonly known and designated as the SCHROEDER MINE.

"AND WHEREAS, it is the desire of JOHN KERSCH, of Yreka, Siskiyou County, California, party of the second part, to become a co-purchaser in said mine and to participate in the profits to be derived from the operations of said mine,

"NOW THEREFORE, in consideration of the sum of $1500.00 Dollars, the receipt whereof is hereby acknowledged, advanced by the party of the second part to the parties of the first part, *it is hereby agreed that said sum of 1500.00 Dollars is to be used for the purpose of acquiring said mine.*

"*IT IS FURTHER AGREED and understood that as soon as said mine is acquired* in the name or names of either or all of them, *the party of the second part is to immediately have and own a vested interest in said mine and shall be entitled . . . to receive henceforth after said purchase one-sixth (1/6) of all net profits from said operations* from whatever source derived and from all ore extracted.

"IT IS FURTHER AGREED that an exact and true accounting shall at all times be kept and the profits to which the party of the second part is entitled shall be paid monthly.

"*IT IS FURTHER AGREED and understood that the money so advanced by the party of the second part shall be used for the said specified purchase of said mine and for no other purposes whatsoever.*" (Italics added.)

Mr. Phares defaulted in his payments to White according to the terms of his assigned lease. White gave him a thirty

day notice to terminate his assigned lease. Labor claims incurred by White prior to his assignment aggregating some $4,500 had not been paid. When the plaintiff paid defendants the $1,500, instead of using it to purchase the mining property according to the terms of the preceding contract, they converted about $1,300 of that amount to payment of the labor claims owed by Mr. White. The defendants abandoned the mining claim. The mine was sold to the state for delinquent taxes. They made no effort to procure title to the mine. After the lapse of about a year this suit in assumpsit was commenced to recover the money advanced with which to purchase the mine.

The findings and judgment are adequately supported by the evidence. The court specifically determined that plaintiff advanced said sum of $1,500 to the defendants ''for the purpose of purchasing and acquiring that certain mine . . . designated as the Schroeder Mine, and for no other purpose or purposes whatsoever.'' While there is conflicting evidence regarding the exclusive purpose for which the money was advanced, the clear language of the written agreement under which the money was advanced supports that finding. The court further finds that the defendants failed to use said sum or any portion thereof to purchase the mine, and upon the contrary that they converted the money and the whole thereof to their own use and benefit and failed to purchase the mine; that said money was not advanced as payment for a partnership interest in the mining enterprise, and that plaintiff is not a partner in that enterprise.

It will be observed the language of the agreement clearly provides that ''the money so advanced . . . shall be used for the said specified purchase of said mine *and for no other purposes whatsoever.*'' It further declares that plaintiff shall ''own a vested interest in said mine'' only *''as soon as said mine is acquired,''* and that plaintiff shall be entitled to ''one-sixth (1/6) of all net profits from said operations,'' only after title to the mine has been acquired. The testimony of the plaintiff corroborates that construction of the agreement. It follows that the money was advanced for the limited specified purpose of purchasing the mine and not otherwise, and that a partnership in the mining enterprise was not contemplated by the parties until after the title had been acquired. Prior to the purchase of the mine and the acquiring of title thereto,

the plaintiff had no interest in the property and no right to participate in the management or control of the mining operations, or to participate in the proceeds thereof. ▮ The question of the existence of a partnership between the parties thereto should be determined primarily by ascertaining the intention of the parties in that regard. Where the respective parties have entered into a written agreement, the intention of the parties should be determined chiefly from the terms of the writing. (De Rigne v. Hart, 94 Cal.App. 209 [270 P. 1013]; 20 Cal.Jur. 686, § 7.) A partnership is an association of two or more persons to carry on as co-owners a business for profit. (Civ. Code, § 2400.) ▮ Ordinarily the existence of a partnership is evidenced by the right of the respective parties to participate in profits and losses and in the management and control of the business. (Black v. Brundige, 125 Cal.App. 641 [13 P.2d 999]; Smith v. Grove, 47 Cal.App.2d 456 [118 P.2d 324]; Martin v. Sharp & Fellows Cont. Co., 34 Cal.App. 584 [168 P. 373]; 20 Cal.Jur. 689, § 9.) ▮ The plaintiff in this case had no participation nor right to share in the management of the mining operations or the proceeds therefrom until after title to the mine had been procured. The court so found. ▮ The question as to whether a partnership exists is a problem for determination of the trial court from the facts and inferences adduced at the trial. (Spier v. Lang, 4 Cal.2d 711, 716 [53 P.2d 138]; Oscar Krenz C. & B. Works, Inc. v. England, 109 Cal.App. 747, 751 [293 P. 689].) Its conclusion in that regard will not be interfered with on appeal when there is substantial evidence to support the court's findings. In the Spier case, supra, which was a suit to recover the value of materials furnished defendants under a written contract for use in an oil drilling enterprise, and in which the other defendants paid Lang amounts under the contract ranging from $100 to $15,000 entitling them to receive 16 2/3 per cent of the proceeds from the wells, the judgment holding that they were not partners was affirmed on appeal. The Supreme Court said:

"The defendants did not participate in the conduct or management of the business of drilling the wells. . . . The court could fairly conclude from the evidence that none of the defendants was ever on the ground for any such purpose and that the plaintiff did not deliver materials on the faith of the defendants' personal credit. The question whether a

partnership or the relation of joint adventurers was created was primarily a question for the trial court to determine from the facts and the inferences to be drawn therefrom. . . .

"The main reliance of the plaintiffs is on the provision of the contract that the defendants were to share in a division of the profits. But this feature of the agreement has long been held not to require a conclusion that a partnership relation existed where also there was no joint participation in the management and control of the business, and the proposed profit-sharing was contemplated only as compensation or interest for the use of the money advanced." (Citing authorities.)

In the present case the written agreement refutes the appellants' theory that the money was advanced to purchase a partnership interest in the mining enterprise. The contract provided that plaintiff was entitled to share in the net proceeds only *after title had been acquired.*

In this case the parties did not actually acquire the mining property, nor did the plaintiff "actually engage in working the claim." Section 2351 of the Public Resources Code provides that:

"A mining partnership exists when two or more persons who own or acquire a mining claim for the purpose of working it and extracting the mineral therefrom *actually engage in working the claim.*"

The plaintiff did not participate in working the claim.

We conclude that it was not the intention of the parties presently to create a partnership in the mining property or that the advancing of the $1,500 should create that relationship. The findings and judgment are therefore supported by the evidence in that regard.

The remaining question to be determined, which is chiefly relied upon by the appellant, is whether, in the absence of a specific limitation of time in the written agreement within which the property was to be acquired, the lapse of about fourteen months is an unreasonable limitation of time within which title to the mine should be acquired under the circumstances of this case.

We conclude that fourteen months was a reasonable time within which defendants were authorized to purchase the property; that they breached the contract in that regard and converted the funds to their own use, utterly failing to take

steps to procure title to the mining property and that plaintiff is therefore entitled to judgment for recovery of his money.

When the time for performance of a contract is omitted from the contract, the law implies that a reasonable time for compliance shall be allowed. (*Anderson* v. *Van Camp Sea Food Co., Inc.*, 98 Cal.App. 787, 793 [277 P, 1099] ; 6 Cal.Jur. 346, § 207.) In determining what period of time would be reasonable, the situation of the parties, the nature of the transaction and the circumstances of the particular case should be taken into consideration. (12 Am.Jur. 855, § 299.)

In 2 Lindley on Mines, second edition, page 1569, section 859, it is said with relation to what constitutes a reasonable time within which to purchase real property that *an exception to the rule* that time is not of the essence of an ordinary contract "is well recognized where the character of the property renders it liable to fluctuations in value." Quoting with approval from *Taylor* v. *Longworth*, 14 Pet. (U.S.) 172, 174 [10 L.Ed, 405], Mr. Lindley says at page 1570 :

" 'In respect to mineral property, it has been said that it requires, and of all properties perhaps the most, the parties interested in it to be vigilant and active in asserting their rights.' "

The preceding text concludes with the statement that :

"The necessity for a strict adherence to the rule that in all contracts for the purchase of mines time is of the essence is apparent."

To the same effect it is said in numerous authorities with respect to agreements for the purchase of mining property that time is of the essence of the contract whether it so specifies or not. (*Skookum Oil Co.* v. *Thomas*, 162 Cal. 539, 546 [123 P. 363] ; *Grotefend* v. *May*, 33 Cal.App. 321, 328 [165 P. 27].) In the case last cited it is said in that regard, quoting with approval from *Waterman* v. *Banks*, 144 U.S. 394 [12 S. Ct. 646, 36 L.Ed. 479] :

" 'Time may become of the essence of a contract for the sale of property, not only by the express terms of the parties, but from the very nature of the property itself ; mining property requires the parties interested in it to be vigilant and active in asserting their rights.' . . . The reason of this rule is that mining property is of that peculiar character that it is subject to frequent, sudden or great fluctuation in value, and to permit an advantage to be gained or great loss to be

suffered by long and unreasonable delay in demanding a conveyance or the money stipulated to be paid for such land would constitute the transaction an unconscientious one. . . .

"If, then, it was his intention or desire to secure the conveyance, he should have been active and vigilant in the matter of the enforcement of his rights thereunder, and not have been guilty of that procrastination or inaction or passiveness which will be held to constitute acquiescence in the breach of a contract of this character or to raise the presumption of the abandonment thereof."

In the case of *Roberts* v. *Evans,* 43 Cal. 380, it was held that an offer to sell property, in which no time for performance was expressed, must be promptly accepted and that the lapse of one year or even six months must be held, as a matter of law, to be an unreasonable time. In the last cited case it was also held that when goods are taken and wrongfully converted to one's own use, the owner may waive the tort and sue in assumpsit for recovery of the value thereof.

The question as to whether plaintiff subsequently orally agreed to waive the provision in the written agreement that the money advanced by him was to be used exclusively for the purchasing of title to mining property was determined adversely to the defendants. While there is a conflict of evidence in that regard, there is adequate proof that the plaintiff did not waive that provision. He so testified.

The judgment is affirmed.

Adams, P. J., and Peek, J., concurred.