[Civ. No. 21380. Second Dist., Div. Three. May 21, 1956.]

WILLIAM A. ZOELLER, Appellant, v. STEVE SCHNEIDER, Respondent.

Donald Armstrong for Appellant.

Clifton A. Hix and Elizabeth Cochran for Respondent.

VALLÉE, J.—Appeal by plaintiff from an adverse judgment in an action for money paid and services allegedly rendered pursuant to a written contract between plaintiff and defendant. Plaintiff contends the findings are not supported by the evidence.

On October 13, 1950, the parties entered into a written contract whereby they agreed to organize a corporation with an authorized capital of $252,500 to be divided 2,500 shares of preferred and 2,500 shares of common stock. Defendant agreed to transfer his plant and equipment to the corporation. Plaintiff agreed to buy 50 shares of preferred for $5,000. It was agreed that the corporation would enter into an employment contract with plaintiff at a salary of $1,000 a month.[1] The corporation was organized and began to

---

[1]Pertinent parts of the contract are: ''THAT WHEREAS, First Party [defendant] owns and is now operating under the firm name and style Wilmington Forge Works at No. 224 N. Marine Avenue, Wilmington, California, a forge works, and in addition owns two forgeing [sic] hammers in storage at the Belyea Trucking Company yard at 200th Street, and Avalon Boulevard and owns two acres of vacant land on East Road between Figueroa and Main Streets, in the County of Los Angeles, and

''WHEREAS, First Party is desirous of organizing a California corporation to acquire the assets above described, and to interest said Second Parties in assisting him in conducting said business after it has been acquired by the corporation to be formed, and such Second Parties are interested in being associated in the management of the business of the corporation when it is organized:—

''2. First Party agrees to transfer and assign to the corporation to

function with defendant's plant and equipment; plaintiff paid the corporation the $5,000, and he was elected president. Plaintiff performed services which he alleged were performed at the request of defendant and were of the value of $3,500. The suit is to recover from defendant the $5,000 paid to the corporation and $3,500 alleged to be the value of the services.

The court found: (1) on October 13, 1950 the parties entered into the contract; (2) Torrance Forge and Steel, Inc., a corporation, was formed; (3) plaintiff advanced $5,000 to the corporation for his own use and benefit; (4) the $5,000 was used by the corporation and it was not expended or used for the benefit of defendant; (5) plaintiff did not render any services at defendant's request of the value of $3,500 or in any other sum; (6) defendant rescinded the contract, gave notice thereof, and was justified in so doing. Judgment for defendant followed, from which plaintiff appeals.

There was evidence of the following facts: The corporation was organized and began to function. A resolution was adopted by the board of directors for issuance of stock in accord with the contract. A permit was then obtained to issue the stock to plaintiff. He paid the $5,000 to the corporation for the stock. No stock was issued. The money was deposited in the bank account of the corporation. Defendant paid some $4,500 of the expenses of the corporation. Plaintiff performed services for the corporation. There is no evidence that he performed any services for defendant. He received about $1,000 from the corporation for his services.

---

be organized, all of the property and assets hereinabove described, in exchange for eight hundred (800) shares of said preferred capital stock and seven hundred fifty-nine (759) shares of said common stock.

"5. Second Parties each agree to purchase from the corporation fifty (50) shares of said preferred stock as follows: Zoeller one of the Second Parties shall pay the sum of $5,000.00 cash in exchange for fifty (50) shares of said preferred stock and McCoy the other Second Party shall give his promissory note in the principal sum of Five Thousand and no/100 Dollars ($5,000.00) for his fifty (50) shares of said preferred stock.

"6. First Party agrees that any corporation organized pursuant to the terms hereof shall enter into an employment contract with Second Parties employing them for a term of One year at salaries of One Thousand Dollars ($1,000.00) per month each. . . .

"9. None of the provisions hereof relative to the issuance of the preferred and common stock of the corporation to be organized shall be operative or binding until a permit of the Corporation Commissioner of the State of California shall first have been obtained. This Agreement is to be subject to obtaining such loan from the Reconstruction Finance Corporation which will be of sufficient amount for the proposed objects of said corporation as set out in this Agreement."

Defendant also performed services for the corporation and received from it about $1,000 for those services. About 2 months after the corporation was organized it was insolvent and plaintiff withdrew $2,529.27 from its bank account, leaving a balance of $4.47. He used the money to pay various obligations of the corporation. Application to the Reconstruction Finance Corporation for a loan had been denied. Defendant then gave plaintiff written notice that he considered himself discharged from all "duties and liabilities" under the contract. The findings are supported by the evidence.

Plaintiff argues that defendant waived the condition that a loan be obtained from the Reconstruction Finance Corporation which was a condition of the contract, because: he participated in the organization of the corporation; while acting as chairman of the meeting of the board of directors he offered to perform his part of the agreement to transfer his assets without making the transfer conditioned upon the obtaining of a loan; and he allowed the new corporation to take over his business. The theory seems to be that defendant breached the contract and that he cannot rely on the failure to obtain a loan as a defense.

■ Waiver is "the intentional relinquishment of a known right or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from the circumstances indicating an intent to waive." (*Panno* v. *Russo*, 82 Cal.App.2d 408, 412 [186 P.2d 452].) ■ There was no waiver on the facts. More than two months after the corporation began doing business plaintiff withdrew from its bank account the $2,529.67 because he feared the account might be seized. The balance was $4.47 and according to plaintiff's testimony there were bills totaling $6,501.79 that had to be paid. A reasonable time had passed in which defendant could see the venture was unsuccessful. (See *Kersch* v. *Taber*, 67 Cal. App.2d 499 [154 P.2d 934]; 12 Cal.Jur.2d 377, § 160.) When defendant knew the corporation would not be able to obtain the loan and that the operation was a failure, he elected to terminate the contract. He had good reason to so act.

The court's findings that the $5,000 was not expended for the use or benefit of defendant and that plaintiff did not render any services for defendant are amply supported. Indeed it is difficult to see how the court could have reached any other conclusion. The $5,000 was paid for stock, not

to or for the use or benefit of defendant; and plaintiff's services were performed for the corporation, not for defendant. Plaintiff lost $5,000 and his time; defendant lost at least $6,500 and his time.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.