[Civ. No. 7585. First Appellate District, Division Two.—October 7, 1931.]

JOHN TURNER, Respondent, v. LILLIAN COOK, Appellant.

Breed, Burpee & Robinson for Appellant.

Frederick W. Mahl, Jr., for Respondent.

DOOLING, J., *pro tem.*—Defendant appeals from a judgment for $1500 with interest from April 25, 1927. Respondent's assignor, L. F. Cowan, is an investment broker and financial counselor. Appellant in December, 1925, owned a substantial part of the capital stock of the Central Mendocino Power Company. Her holding consisted of an interest in a pool of 79,776 shares of common stock which was then held in escrow to secure the repayment of a loan. The due date of the loan was approaching and appellant was faced with the necessity of saving her stock. At the same time the financial condition of the power company was not satisfactory; and on December 15, 1925, appellant first consulted Cowan to advise and assist her both in saving her own stock and in reorganizing or refinancing the company. After a number of consultations and on April 6, 1926, appellant executed and delivered to Cowan the following memorandum of agreement:

"San Francisco, Calif.
"April 6, 1926

"Mr. L. F. Cowan,
   "155 Montgomery St.,
      "San Francisco, Calif.
"Dear Sir:

"In consideration of services rendered and to be rendered by you in connection with the sale of one hundred and five thousand (105,000) shares, (par value $1.00) of the Central Mendocino County Power Company, it is hereby agreed that in event of my release of my rights, claims and interests, or upon acceptance by and delivery to me of fifteen thousand dollars ($15,000.00) as settlement for my rights, claims, and interests in connection with the holdings of seventy-nine thousand seven hundred and seventy-six (79,776) shares of the Common Stock of the Central Mendocino County Power Company, that I am to pay you the sum of fifteen hundred dollars ($1500.00) as a guarantee that you shall receive contract to purchase one hundred and five thousand (105,000) shares of the Common Stock of the Central Mendocino County Power Company at eighty cents per share, together with a guarantee of fourteen cents per share as payment of dividends on said stock at the rate of 7% per annum for a period of two years.

"It is understood that you are to refund me the said sum of fifteen hundred dollars ($1500.00) on the delivery to you of said contract and upon the provision and condition that you shall have, on or before September, 1926, sold seventy-five (75) per cent of one hundred and five thousand (105,000) shares of the Common Stock of the Central Mendocino County Power Company.

"In event of my failure to deliver said contract I am to be released from all obligations in connection therewith, upon the forfeiture of the sum of said fifteen hundred dollars ($1500.00).

"Time is the essence of this agreement.

                    "(Signed) MRS. LILLIAN COOK.
"Witnessed, L. A. KOTTINGER."

Cowan never received a contract to purchase 105,000 shares of the common stock of the company and appellant never received $15,000 for her interest in the 79,776 shares of its common stock; but on April 25, 1927, through no effort

of Cowan's, appellant transferred her interest in such stock for a sum less than $15,000. Thereafter this action was commenced by respondent, as Cowan's assignee, to recover the sum of $1500 with interest from April 25, 1927, and the judgment appealed from followed.

It was the theory of the trial court that the contract bound appellant to pay Cowan $1500 at any time after its execution that she might transfer her interest in the stock described. Appellant urges that the obligation to pay the $1500 expired when her interest in such stock remained untransferred in September, 1926.

One of the cardinal rules for the construction of contracts is that they must be considered as a whole, each part thereof being construed in the light of every other part. This rule has been recently well stated in *Ogburn* v. *Travelers Ins. Co.*, 207 Cal. 50, 51, 52 [276 Pac. 1004, 1005], in the following language: "A contract should be construed, however, as an entirety, the intention being gathered from the whole instrument taking it by its four corners. Every part thereof should be given some effect. (Sec. 1641, Civ. Code.) In other words, 'the sense and meaning of the parties to any particular instrument should be collected *ex antecedentibus et consequentibus;* that is to say, every part of it should be brought into action, in order to collect from the whole one uniform and consistent sense, if that may be done. (*Balfour* v. *Fresno C. & I. Co.*, 109 Cal. 221, 227 [41 Pac. 876, 878].)"

Applying this rule to the contract before us we find that appellant, upon the transfer of her interest in the stock described, was to pay Cowan $1500 not absolutely, but "as a guarantee" that he should receive a contract to purchase 105,000 shares of common stock on certain designated terms. In the sense in which the term is here used "guarantee" is synonymous with "security". The $1500 was to be paid to secure or insure Cowan that he would receive the contract to purchase 105,000 shares. A further examination of the contract shows that it contemplated that Cowan should receive the contract to purchase 105,000 shares prior to September, 1926, because Cowan is to "refund" the $1500 if prior to that date he has sold seventy-five per cent of the 105,000 shares. That the payment of the $1500 was intended to be made prior to September, 1926, is clearly shown by the

use of the word "refund" in this clause. To refund is to pay back and the $1500 could not be paid back prior to September, 1926, unless it had first been paid to Cowan prior to that time.

Reading the contract as a whole, we think that it clearly appears that the parties contemplated not that appellant should pay Cowan $1500 absolutely and at any time that she might transfer her interest in her stock, but only if such transfer was made by her prior to the date when Cowan was to receive the contract to purchase 105,000 shares, i. e., not later than September, 1926. The provision that the $1500 is to be paid "as a guarantee" that Cowan will receive such contract, and the provision that Cowan is "to refund" the $1500 upon the sale of seventy-five per cent of the 105,000 shares before September, 1926, both become meaningless if the contract is construed otherwise. It is patent that the $1500 could not be paid "as a guarantee" for the performance of an act at a time already past, and equally patent that the provision for its being refunded on the performance of an act at a time already past would by such a construction be shorn of any meaning or effect.

The language of the agreement "that in event of my release of my rights, claims and interests . . . that I am to pay you the sum of fifteen hundred dollars" if standing alone would support the construction sought to be placed upon it by respondent. But it does not stand alone and "the rules of construction forbid seizing upon some isolated provision of a contract in order to compel a certain result, and require that the intention be derived from a consideration of the entire instrument". (*Skookum Oil Co.* v. *Thomas,* 162 Cal. 539, 547 [123 Pac. 363, 366].)

The construction which we have placed upon this agreement is fortified, if need be, by the situation of the parties at the time it was drawn. At that time Cowan believed that he had a purchaser for appellant's interest in the pooled stock for $15,000. So believing, the contract was drawn in the expectation that the transfer and sale of appellant's stock would be shortly made and long prior to September, 1926; Cowan did not guard against the contingency that the sale of appellant's stock might not be made until after that date. In fact, however, the purchaser whom Cowan believed he had secured refused to pay $15,000 for the stock and the

sale fell through. This was Cowan's misfortune, but cannot justify us in construing a contract for the payment of a sum of money "as a guarantee" for the performance of another act into a contract to pay absolutely and at any time.

The judgment accordingly must be and is reversed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 6, 1931, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 3, 1931.