HUDSON v. ELLIOTT et al.

No. 33836.   Feb. 6, 1951.

*252 P. 2d 482.*

Harry W. Horton, El Centro, Cal., and Woodson E. Norvell, Hughey Baker, and George E. Norvell, Tulsa, for plaintiff in error.

Frank Hickman, Tulsa, for defendants in error.

CORN, J. Plaintiff brought suit individually and as guardian of her husband, Ralph G. Hudson, an incompetent, to rescind a contract and recover earnest money paid thereunder. Subsequent to bringing the action, the husband died, and the suit was continued by plaintiff as his administratrix.

About September 2, 1946, plaintiff and her husband, residents of California, stopped at a tourist court in Vinita, Oklahoma, owned by defendants, Elliotts, and McCandlesses, but encumbered by a mortgage in favor of the defendant bank. Learning the property was for sale Hudson expressed interest in purchasing the property, and examined it with this in mind. While there plaintiff advised Mrs. McCandless that Hudson was about to suffer a nervous breakdown. The following day the Hudsons met the Elliotts in Tulsa and after some discussion a price of $20,000 was put upon the property. Hudson declared he was ready to close the deal and gave Mr. Elliott a check for $2,500, as earnest money to be applied on the purchase price. This check was drawn upon plaintiffs' joint account in a California bank.

The next day the parties returned to Vinita, and, in company with the McCandlesses, called on a lawyer in that town who had handled other transactions on the same property for defendants. The details were explained and he drew up a contract for sale and purchase of the property, secured the abstract from the bank and examined and approved the title. The abstract, a copy of the contract and a warranty deed executed by defendants were deposited in the bank. The contract provided for forfeiture of the earnest money as liquidated damages in the event of the vendees' failure to carry out the terms and complete the purchase according to the contract by November 1, 1946.

Upon completion of the transaction plaintiffs immediately began their return to California. During the return trip Hudson's mental and nervous condition seemed to grow worse. After their arrival home his mental condition seemed to deteriorate more rapidly. Plaintiff notified defendants by mail of his condition, that he had been placed in a sanatarium, and that because of this it would be impossible for them to complete the transaction. Plaintiff inquired whether defendants would retain an amount out of the earnest money to reimburse them for their trouble, and then return the balance and release plaintiffs from the contract. Defendants consulted the attorney who prepared the contract, and he then wrote plaintiff a letter offering to rescind the contract and return the earnest money, less expenses, provided defendants were able to find another purchaser by November 1, 1946. The letter also asked that plaintiff request the defendant bank to release the deed executed by defendants, so they might negotiate a sale to someone else. This plaintiff refused to do, and thereafter she

brought this action to rescind the contract and recover the earnest money.

Plaintiff's petition first alleged the defendant bank held the earnest money in escrow only as a stakeholder, and asked that the bank be enjoined from paying such funds over to the other defendants.

The petition alleged that at the time the contract was made Hudson was mentally ill and without understanding, and that plaintiff was in a state of fear and under duress so that she was incapable of binding herself, neither of them being capable of free or voluntary action; that defendants learned plaintiffs had $2,500 cash and conceived the design of obtaining same from plaintiffs; in furtherance of such design plaintiffs were taken to a lawyer who previously had represented defendants, and being lacking in understanding and business experience, they did not understand that the earnest money paid was to be forfeited if the transaction was not completed; that plaintiffs were further overreached and misled because the price was exorbitant and the contract unconscionable, title to the property being unmerchantable; that within ten days after the contract was signed plaintiffs sought to rescind. Plaintiffs asked judgment against the bank for return of the money, and sought cancellation of the contract as to the other defendants. Plaintiffs also set out a second cause of action for recovery of exemplary and compensatory damages.

The defendant bank, by separate answer, denied any knowledge of the controversy, or that any money or escrow agreement had been placed with the bank by the parties, although admitting that the contract and deed had been left at the bank for safekeeping. Further, that other defendants had presented plaintiff's check for payment, and the bank had cashed same and credited their account; and that defendant bank held a mortgage on the property for $6,000 reduced to $5,200 by payments. No further proceedings were taken against the bank.

By answer the principal defendants admitted the allegations concerning the negotiations leading up to the execution of the contract and receipt of the down payment. However, they denied Hudson's mental illness, or that plaintiff was in a state of fear or duress. Further, that plaintiffs were advised of the necessity for having the abstract brought down to date and title examined, and plaintiff's employed the lawyer in question; that after execution of the contract it was agreed orally that everything be placed in escrow in the bank, the instructions being that the escrow was to be delivered upon plaintiff's completion of the transaction according to terms of the contract. Defendants admitted receipt of plaintiff's letters advising of her husband's condition and their inability to complete the contract, and that they advised her they would rescind provided another purchaser could be found; that plaintiffs were requested to release the escrow, which they refused to do; that prior and subsequent to execution of the contract defendants received offers of $20,000 for the property, and defendants at all times were able to convey merchantable title.

Before trial defendants filed a supplemental answer showing they had secured a release of the escrow papers. Therein it was further alleged that, prior to the time the escrow was released, defendants had been unable to sell the property to any other purchaser and during such period the market value of their property decreased to $16,000, defendants thereby being damaged in amount of $4,000.

When the case was tried, the plaintiff, in effect, abandoned the allegations of the petition other than the claim that the value of the property in question was $20,000, and, therefore, defendants were not entitled to claim the earnest money as liquidated damages under the terms of the contract. The case was tried as an equity proceeding, although the court impaneled a jury for the purpose of fixing actual damages, in the event the court should

find that the provision for liquidated damages was invalid.

An extended narrative of the evidence herein is unnecessary. The record, the correctness of which is not certified by a court reporter, contains evidence in plaintiff's behalf in the form of depositions read at the trial, as well as other evidence in narrative form supplied from the testimony of witnesses given by deposition in the State of California. The record does not contain any of the evidence offered by defendants at the trial. The record does contain sufficient evidence to establish Hudson's lack of mental capacity during the negotiations leading up to the contract. Likewise, the record reflects, and the trial court so found, that no fraud or duress was practiced upon plaintiff, who was in her right mind and possessed of full knowledge of all the facts, and that she knew her husband's mental state, but did not disclose this knowledge to defendants.

In rendering judgment the trial court noted that the parties had stipulated the applicable community property law of California was the same as the law of this state; and that the earnest money payment had been made from the community estate. The court found that because of his mental condition Hudson would have been entitled to rescind, and concluded that, assuming the provision for liquidated damages to be good, that his half of the down payment could be recovered. Judgment was rendered decreeing that defendants return to plaintiff her husband's half of the earnest money.

The court further found that the property had no readily ascertainable market value, but was of fluctuating value, making it impracticable to attempt establishment of actual damages. The court concluded that the liquidated damages provision was enforceable, and since the remainder of the earnest money was part of the down payment, same could not be recovered, under the rule that where a part of the purchase price has been paid recovery back cannot be had where the party making the partial payment fails to fulfill the terms of the contract.

The assignments of error on appeal are presented under three general headings: (1) The judgment rendered is outside the issues made by the pleadings; (2) the judgment is contrary to law. The argument offered in support of the claim for reversal of the judgment is made under six principal headings. However, we deem it unnecessary for a proper determination of this case to consider each such heading of argument separately and at length, since the decisive issue is whether the trial court's judgment holding valid the contract provision for liquidated damages was correct.

Plaintiff urges that our statutes (15 O.S. 1941 §214) prohibits recovery of a penalty for failure to perform a contract. However, this section is limited by the provision of the following section (215), which declares that a contract may validly provide for liquidated damages where it is impracticable or difficult to fix the amount of actual damages. In support of her position plaintiff cites Mid-Continent Life Insurance Co. v. Goforth, 193 Okla. 314, 143 P. 2d 154; Sonken-Galambra Corp. v. Abels, 185 Okla. 645, 95 P. 2d 601, and Hurley v. Anicker, 51 Okla. 97, 151 P. 593. Consideration of these cases reveals that they do not support plaintiff's position.

In the Goforth case, supra, we held that a vendor could not maintain an action against a vendee under a contract of sale which stipulated that the down payment should be considered as liquidated damages for failure to complete the contract, inasmuch as the action was not brought by the vendee to recover a down payment after breach of a contract of purchase, but was, in fact, an action by the vendor to enforce payment of the sum stipulated as a down payment, which was an effort by the vendor to enforce a penalty.

In the Abels case, supra, our decision turned upon the proposition that there

had been only a partial breach of the contract, and the contract clause providing for reversion of certain personal property to the vendor, under enumerated conditions, amounted to a penalty and was unenforceable since liquidated damages were not mentioned in the contract.

In the Hurley case, supra, the parties to the contract mutually agreed to rescission. The opinion clearly points out that where rescission of the contract has been had, the vendee may recover any amount paid out under the contract, notwithstanding a provision for forfeiture of the money paid down. At page 99 of 51 Okla. Reports is found the following:

"This court, in the case of Helm v. Rone, 43 Okla. 137, 141 P. 678, has quoted with approval from the case of Hansbrough v. Peck, 5 Wall. 497, 18 L. Ed. 520, the following:

" 'And no rule in respect to the contract is better settled than this: That the party who has advanced money, or done an act in part performance of the agreement, and then stops short and refuses to proceed to its ultimate conclusion, the other party being ready and willing to proceed and fulfill all his stipulations according to the contract, will not be permitted to recover back what has thus been advanced or done. Green v. Green, 9 Cow. (N. Y.) 46; Ketchum v. Everton, 13 Johns. (N.Y.) 359, 7 Am. Dec. 384; Leonard v. Morgan, 6 Gray (Mass.) 412; Haynes v. Hart, 42 Barb. (N.Y.) 58. The same ·doctrine has been repeatedly applied by the courts of Illinois, the state in which this case arose. Chrisman v. Miller, 21 Ill. 236, and cases referred to in the argument.' "

For further statement of the rule, see generally 15 Am. Jur., Damages, §240 et seq; 55 Am. Jur., Vendor & Purchaser, §525.

The record before this court does not contain defendants' evidence. However, the trial court heard all the testimony and determined that it was impossible to ascertain the amount of actual damages defendants suffered by reason of the plaintiff's failure to complete the contract. There is no showing that such finding is contrary to the evidence. Inasmuch as this court indulges the presumption as to the correctness of the trial court's decision, we are of the opinion the trial court was correct in holding valid the contract provision for liquidated damages, and in enforcing same against plaintiff.

The record does disclose that at the time of execution of this contract plaintiff knew and understood the nature of her act. The record does not show that plaintiff suffered from any fraud or duress. Our statute, 15 O.S. 1941 §233, enumerates the specific instances wherein a party may rescind a contract. This statute provides as follows:

"A party to a contract may rescind the same in the following cases only:

"1. If the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party.

"2. If through the fault of the party as to whom he rescinds, the consideration for his obligation fails in whole or in part.

"3. If such consideration becomes entirely void from any cause.

"4. If such consideration, before it is rendered to him, fails in a material respect, from any cause; or,

"5. By consent of all of the other parties."

Clearly plaintiff's pleading and evidence wholly fail to bring her within any of the grounds set forth, although she originally brought this action to rescind the contract for fraud, duress and misrepresentation, together with the claim of her husband's lack of mental capacity. The trial court found that because of his mental condition Mr. Hudson was entitled to rescind the contract. The evidence fully supports the court's finding in this respect, and

no contention is made that the trial court erred in so holding.

The court further found no fraud was worked on plaintiff, no duress was exercised by or with defendants' knowledge, and plaintiff was in her right mind and with full knowledge of all the facts. In view of such findings, the court held plaintiff was not entitled to rescind, and that the half of the earnest money supplied by plaintiff could not be recovered. We are of the opinion the trial court was correct in holding the contract provision for liquidated damages to be enforceable against plaintiff in her individual capacity.

Judgment affirmed.

WELCH, GIBSON, DAVISON, HALLEY, and JOHNSON, JJ., concur. ARNOLD, C.J., and LUTTRELL, V.C.J., concur in conclusion.